UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WAVE LENGTH HAIR SALONS OF
FLORIDA, INC., d/b/a SALON ADRIAN
on behalf of itself and all others similarly
situated

        Plaintiff,

v.                                Case No:  2:16-cv-206-FtM-38MRM

CBL & ASSOCIATES PROPERTIES,
INC., CBL & ASSOCIATES
MANAGEMENT, INC., CBL &
ASSOCIATES LIMITED
PARTNERSHIP and JG GULF
COAST TOWN CENTER, LLC,

        Defendants.

                                 /

## OPINION AND ORDER[1]

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's

First Amended Class Action Complaint and Supporting Memorandum (Doc. 46) filed on

September 6, 2016.[2]  Plaintiff Wave Length Hair Salons of Florida, Inc., d/b/a Salon

Adrian ("Salon Adrian") responded in opposition (Doc. 52) on September 29, 2016.

Defendants filed a reply brief (Doc. 67) on October 24, 2016.  On February 21, 2017,

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] The Court will refer to CBL, CBL Management, CBL Partnership and JG Gulf Coast collectively as the Defendants.

Salon Adrian filed a Notice of Supplemental Authority (Doc. 76) and Defendants filed a Response to the Supplemental Authority (Doc. 79) on March 6, 2017.  Having been fully briefed, the Motion is ripe for review.  For the following reasons, the Court grants in part and denies in part Defendants' Motion.

## BACKGROUND

This class action stems from the inflation of tenants' energy bills by interrelated corporations that owned, operated, and managed malls nationwide. (Doc. 32).  Salon Adrian is a Florida corporation that entered into a ten-year lease with JG Gulf Coast Town Center, LLC ("JG Gulf Coast") at the Gulf Coast Town Center in Fort Myers, Florida. (Doc. 32 at ¶ 8).  JG Gulf Coast owned Gulf Coast Town Center until it defaulted on its loan and the property reverted back to the lender. (Doc. 32 at ¶ 13).  CBL & Associates Properties, Inc. ("CBL") is a real estate investment trust that holds, owns, or has interest in malls in twenty-seven states. (Doc. 32 at ¶¶ 6, 9).  CBL owned Gulf Coast Town Center through JG Gulf Coast. (Doc. 32 at ¶¶ 6, 9).  CBL & Associates Limited Partnership ("CBL Partnership") is affiliated with CBL and uses CBL & Associates Management, Inc. ("CBL Management") to manage Gulf Coast Town Center. (Doc. 32 at ¶ 10-11).

The Amended Complaint alleges that Salon Adrian entered into a lease agreement with JG Gulf Coast on June 13, 2006. (Doc. 32 at ¶ 8).  The lease included a provision that required Salon Adrian to pay "all charges for electricity. . . . provided that the tenant shall not be charged more than the rates it would be charged for same services if furnished directly to the leased premises by the Local Utility Company." (Doc. 32 at ¶ 20).  According to Salon Adrian's reading of the lease, the electrical costs it and Gulf

2

Coast's other tenants paid were limited to the amount JG Gulf Coast paid with no additional markup.  (Doc. 32 at ¶ 22).

After Salon Adrian opened its Gulf Coast Town Center location, it received invoices from CBL and CBL Management. (Doc. 32 at ¶ 24).  Due to a decrease in business, Salon Adrian attempted to reduce its electrical cost by implementing energy saving appliances. (Doc. 32 at ¶¶ 26-28).  When that did not work, Salon Adrian complained to CBL Management regarding electrical costs. (Doc. 32 at ¶ 31).  In response, CBL paid Valquest Systems, Inc. ("Valquest") to audit Salon Adrian's energy consumption.  (Doc. 32 at ¶¶ 29-31).  Valquest overstated Salon Adrian's energy consumption in order to hide the intentional electrical cost markups by CBL and CBL Management. (Doc. 32 at ¶ 31).

In 2015, Wells Fargo foreclosed on Gulf Coast Town Center after JG Gulf Coast defaulted on its mortgage loan. (Doc. 32 at ¶ 32).  Wells Fargo replaced CBL Management with a new management company. (Doc. 32 at ¶ 32).  The new management company substantially lowered Salon Adrian's electricity bills. (Doc. 32 at ¶¶ 33-34).

The Amended Complaint is not limited to just Gulf Coast Towner Center.  Salon Adrian alleges that CBL, CBL Partnership, and CBL Management perpetuated a nationwide scheme to implement a standard clause into leases that barred tenants from performing independent audits on their energy usage.  In turn, they overcharged tenants for electricity and used mail and wire fraud to distribute the leases, energy bills, and profits derived from the scheme.

The Amended Complaint comprises six counts:  Count I – Racketeering Influenced and Corrupt Organizations Act ("RICO"); Count II – Unjust Enrichment; Count III - Florida

Deceptive and Unfair Trade Practices Act ("FDUPTA");  Count IV -Florida Civil Remedies for Criminal Practices ("Florida RICO"); Count V – Breach of Contract; and Count VI – Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing. Defendants move to dismiss every claim, but breach of contract advancing arguments for lack of standing and failure to state a claim.

## LEGAL STANDARD

### A.   RULE 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction.  "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dp't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991).  When moving for dismissal, a defendant may attack a complaint facially or factually. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1250 (11th Cir. 2007)).  The differences are

> [a] facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.

*Id.* (quoting *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1250 (11th Cir. 2007)).  In a factual attack, the truthfulness presumption does not attach to the plaintiff's allegations. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)).  Here, Defendants launch facial and factual attacks.

**B.     RULE 12(b)(6)**

Rule 12(b)(6) allows a defendant to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Pleadings must contain short plain statements of the claim which show that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).  The court must accept all "factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citing *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).  On the other hand, a court has no obligation to accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Pleadings are evaluated under the *Twombly-Iqbal* plausibility standard.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonably inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663.  A complaint "does not need detailed factual allegations" to survive dismissal, but a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  A more stringent pleading requirement controls when a party alleges fraud or mistake and "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Rule 9(b) does not exist in a vacuum and a party should read it in conjunction with Rule 8 when applicable. *See Ashcroft*, 556 U.S. at 686.

## DISCUSSION

Defendants attack the Amended Complaint on several fronts. (Doc. 46).  First, they move to dismiss for lack of standing.  Second, Defendants move to dismiss all counts but

5

Count V for failure to state a cause of action.  The Court will address each argument in turn.

## A.    STANDING

### 1.  Standing – An Administratively Dissolved Corporation

Defendants argue that Salon Adrian does not have standing because it was administratively dissolved when the original Complaint was filed and remained so when the Amended Complaint was filed.[3]   Plaintiff responds that Florida's Division of Corporations reinstated Salon Adrian's corporate status and that Florida law allows a dissolved corporation to sue and be sued.  Before addressing the merits of these arguments, the Court will provide a brief overview on standing.

"Standing in federal court is a question of federal law, not state law." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2013).  To establish the constitutional requirements of standing, a plaintiff must establish three elements. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The three elements include (1) plaintiff "suffered an injury in fact – an invasion of a judicially cognizable interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal

---

[3] Here, both parties advanced public records for judicial notice.  A court may consider a document attached to a motion to dismiss without turning it into a summary judgment motion if the document is central to the plaintiff's claims and its authenticity is not challenged. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). "Public records are among the permissible facts that a district court may consider." *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006).  The Court takes judicial notice of both Exhibit 1 in Defendants' Motion to Dismiss (Doc. 46-1) and Exhibit A in Salon Adrian's Response (Doc. 52-1) and will consider these documents in deciding the Defendants' motion to dismiss.

connection between the injury and conduct complaint of – the injury has to be fairly traceable to the challenged action of the defendant"; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks, citations, and brackets omitted).  Besides the constitutional requirements, there are three prudential limits on standing: (1) plaintiff must assert its own rights and interests and may not rely on the rights and interests of others; (2) federal courts will not adjudicate abstract questions of wide public significance; and (3) plaintiff's complaint must fall within the zone of interests to be protected by the statute in question. *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805 (11th Cir. 1993) (citations and internal quotations omitted).   In a class action, the class representative or named plaintiff needs to have individual standing or they cannot bring a claim on behalf of the class as a whole. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (citations omitted).  "When standing is raised in a motion to dismiss, the issue is properly resolved by reference to the allegations in the complaint." *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) (citation omitted).

Against this backdrop, the Court addresses Defendants' standing argument. Contrary to Defendants position, Florida Statute § 607.1622(8) does not deal with standing at all.[4]   Rather, § 607.1622(8) reads as a qualified ban on a dissolved corporation's capacity to sue.  Section 607.1622(8) provides

---

[4] The Court acknowledges that § 607.1622(8) may indirectly impact standing issues when an administratively dissolved corporation enters into a contract or obtains a legal right while dissolved and brings suit before reinstatement. *See Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (2003).  That factual issue is not present here and the Court makes no comment on said issue.  Rather, Salon Adrian entered into the lease before it was administratively dissolved.

> [a]ny corporation failing to file an annual report which complies with the requirements of this section shall not be permitted to maintain or defend any action in any court of this state until such report is filed and all fees and taxes due under this act are paid and shall be subject to dissolution or cancellation of its certificate of authority to do business as provided in this act.

Fla. Stat. § 607.1622(8).  Florida case law supports the Court's reading of § 607.1622(8). *See Trans Health Mgmt., Inc. v. Nunziata*, 159 So.3d 850, 855 (Fla. 2nd Dist. Ct. App. 2014) (finding that a dissolved corporation did not have capacity to appeal a judgment, but noted, perhaps in dicta, that the corporation had standing to appeal); *see also Selepro, Inc. v. Church*, 17 So. 3d 1267, 1269 (Fla. Dist. Ct. App. 2009) ("[A]n administratively dissolved corporation has the capacity to sue provided the suit is necessary to wind up and liquidate its business and affairs.").

Cases cited by Defendants do not persuade otherwise.  For example, Defendants rely on *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003) to support their argument. The issue in *Paradise Creations, Inc.* was whether Florida's corporate revival statute retroactively conferred standing when the corporation did not have title to a patent at the inception of the lawsuit.[5] *Id.* at 1309.  Ultimately, the court found that the corporation, after admitting it did not have an enforceable right to the patent at the time it filed suit, could not rely on a state corporate revival statute to confer standing. *Id.* at 1310.

---

[5] "When the reinstatement is effective, it relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution never occurred." Fla. Stat. § 607.1422 (3).

Here, Defendants do not argue that Salon Adrian was administratively dissolved at the time it entered the lease.  Rather, they maintain Salon Adrian lacked standing because it was administratively dissolved before filing suit.  There is nothing to suggest Salon Adrian did not have the capacity to enter the lease.  Defendants' argument that Salon Adrian did not have standing to sue due to Florida's corporate dissolution statute is unconvincing.  Whether Salon Adrian had capacity to sue is a different issue.

Capacity to sue and standing are different legal concepts, as "capacity to sue speaks to a party's legal qualifications, such as legal age, that determines one's ability to sue or be sued." *Gonzalez-Gonzalez-Jimenez de Ruiz v. United States*, 231 F. Supp. 2d 1187, 1196 (M.D. Fla. 2002), *aff'd sub nom. Gonzalez-Jiminez De Ruiz v. United States*, 378 F.3d 1229 (11th Cir. 2004); *see also Miller v. City of Cincinnati*, 870 F. Supp. 2d 534, 538 (S.D. Ohio 2012) ("Capacity and standing are two distinct legal questions.").  A party can have the standing to sue, but not the capacity. *See id.*  A corporation's capacity to sue is determined by the law under which it was organized. *See* Fed. R. Civ. P. 17(b)(2). Here, Salon Adrian's capacity is governed by Florida law.

To the extent that Defendants argue Salon Adrian does not have capacity to sue, the Court disagrees.  Here, it is undisputed that Salon Adrian was administratively dissolved at the time this action was initiated.  Nonetheless, Florida Statute § 607.1422 provides an administratively dissolved corporation the ability to obtain reinstatement that "relates back to and takes effect as to the effective date of the administrative dissolution." Fla. Stat. § 607.1422 (1)-(3).  For example, in *Allied Roofing Indus., Inc. v. Venegas*, a Florida appellate court overturned a trial court's dismissal because the administratively dissolved corporation was reinstated under Florida's corporate revival statute.  862 So.

2d 6, 8-9 (Fla. Dist. Ct. App. 2003).  The dismissal was deemed improper because the corporation was reinstated before the order of dismissal and the reinstatement retroactively applied to the time the corporation dissolved. *Id.*

Salon Adrian was administratively dissolved in 2014 and reinstated in 2016. (Doc. 46-1) (Doc. 52-1).  Due to Florida's corporate revival statute, Salon Adrian's capacity to sue retroactively applied to its date of dissolution. The Court sees no reason to go against the plain language of Florida Statute § 607.1422 or established Florida case law.  For the Court's purposes, Salon Adrian has capacity to sue.

### 2. *Standing – Unjust Enrichment*

Next, Defendants argue that Salon Adrian does not have standing to bring nationwide putative class claims under RICO or state unjust enrichment claims because the law varies from state to state and circuit to circuit.  Defendants further argue Salon Adrian fails to plead that it suffered any injury-in-fact actionable under any other state's laws or there is any causal connection between the Florida conduct and any alleged injury suffered in other states. (Doc. 46 at 10).  Salon Adrian contends that deciding standing at this time is premature and the Court should reserve ruling on these issues until the class certification stage.

The first matter to address is whether standing should be determined at the class certification stage or as a threshold matter.  Generally, standing is considered a threshold matter. *See Florida Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999); *see also Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("A named plaintiff who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone.").  When a named

plaintiff alleges more than one claim, each claim must be analyzed separately and a claim cannot be asserted on behalf of a class unless one named plaintiff suffered the injury giving rise to the claim.  *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) ("[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each subclaim.").

Nevertheless, the Supreme Court has addressed class certification before standing where class certification issues are "logically antecedent" to Article III issues. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 612 (1997); *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999).  To clarify logically antecedent, the Third Circuit declined to decide jurisdictional issues first because they "would not exist but for the certification of this class action." *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 623 (3d Cir. 1996), *aff'd sub nom. Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997).  In the wake of *Amchem Product* and *Ortiz,* courts have reached different conclusions as to when to address standing. *See e.g. In re: Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2016 WL 1266609, at *6 (S.D. Fla. Mar. 11, 2016) (addressing standing before the class certification stage and finding that a Florida corporation did not have standing to pursue claims under the consumer protection laws of other states); *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1231 (S.D. Fla. 2015) (refusing to address class standing for common law unjust enrichment claims and tortious interference until the class certification stage); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010) (dismissing statutory state law claims for lack of standing where no named plaintiff resided

in the state from which the claim was asserted); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1372 (S.D. Fla. 2001) (dismissing anti-trust claims for lack of standing where none of the statutes authorized actions based on commerce in other states). The Eleventh Circuit has not addressed this issue. But the Ninth Circuit found that "[a]lthough the court in *Fibreboard* examined the class issues before the question of Article III standing, it did so in the very specific situation of a mandatory global settlement class. *Fibreboard* does not require courts to consider class certification before standing." *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (citations omitted). The Court finds that logic illustrated here. The standing issues here exist prior to class certification. Because a named plaintiff must have standing for each claim it asserts, the Court will address standing now.[6]

The Court agrees with Defendants' assertion that Salon Adrian does not have standing to bring a nationwide action on behalf of a putative class for unjust enrichment when its claims arise from actions in Florida.[7] Salon Adrian is incorporated under Florida laws, has its principal place of business in Florida, and has entered a lease in Florida. (Doc. 32 at ¶¶ 7-8, 18-19). Because the party invoking standing bears the burden, Salon Adrian failed to carry its burden for any unjust enrichment claim other than Florida. *See Bischoff v. Osceola Cty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000). Accordingly, the Court

---

[6] The Court also notes that deferring standing until the class certification stage is inconsistent with Rule 1.

[7] The Amended Complaint identifies "The Nationwide Class" as "[a]ll individuals and entities that entered into lease agreements at shopping malls managed by CBL & Associates Management, Inc., that contained a provision that stated that electricity would not be marked-up or inflated and who paid for electricity in connection with such agreements within the applicable limitations period." (Doc. 32 at 16).

grants Defendants Motion and Count II is dismissed to the extent that it pleads allegations under the common law of states other than Florida.

### 3. Standing – RICO

The Court turns its attention to Defendants' passing argument that Salon Adrian lacks standing to bring a RICO claim.  Defendants fail to provide this court a basis for dismissal.  Instead, they cite case law that discusses a party's standing for state law. Defendants prematurely request this Court rule on issues reserved for the class certification stage, namely whether there are questions of law common to the class. *See* Fed. R. Civ. P. 23.  The Court finds no merit to Defendants' argument that Salon Adrian lacks standing under the RICO statutes due to varying law in the circuit courts.

### B.   Racketeer Influenced and Corrupt Organizations Act

The Amended Complaint alleges that the Defendants violated RICO, 18 U.S.C. § 1962 (a), (c)-(d).  Defendants attack Salon Adrian's RICO allegations on several grounds: (1) the amended complaint fails to meet the pleading requirements of Rule 9(b); (2) lack of continuity; (3) the allegations are contradicted by the lease; (4) failure to state a claim for conspiracy; and (5) Salon Adrian should not be allowed to inject RICO into a "garden variety" landlord tenant dispute.

### 1. Failure to State a Claim under Rule 9(b)

Defendants argue that Salon Adrian failed to plead the commission of the predicate RICO acts of mail fraud and wire fraud with the requisite particularity under Rule 9(b).[8]

---

[8] "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citation omitted).

(Doc. 46).    RICO claims with predicate acts concerning mail or wire fraud must be pled with the increased level of particularity required under Rule 9(b). *See Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007).   "To satisfy Rule 9(b)'s 'particularity' standard, [courts] generally require that a complaint identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the Defendants gain by the alleged fraud." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citation omitted).  Similarly put, the plaintiff must allege "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (citations omitted).

Additionally, the plaintiff who pleads fraud must "reasonably notify the defendants of their purported role in the scheme." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (citing *Midwest Grinding [Co. v. Spitz]*, 976 F.2d 1016, 1020 (7th Cir. 1992)).  "In a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Brooks v. Blue Cross*, 116 F.3d at 1381.

Defendants' Motion to Dismiss focuses on Salon Adrian's failure to plead racketeering activity with the specificity required for each Defendant.  A plaintiff pleading

a civil RICO claim must demonstrate a "pattern of racketeering activity."[9] 18 U.S.C. §§
1962; 1961(5).  When pleading a pattern of racketeering activity, plaintiffs must charge
that the (1) defendants committed two or more predicate acts within a ten-year time span;
(2) predicate acts were related to one another; and (3) predicate acts demonstrated
criminal conduct of a continuing nature. *See Jackson v. BellSouth Telecomms.*, 372 F.3d
1250, 1264 (11th Cir. 2004).

Accepting all the well pled factual allegations as true, the allegations are sufficient
to meet the heightened pleading requirements.  The allegations related to the precise
statements, documents or misrepresentations made (Doc. 32 at ¶¶ 3, 8, 20, 36, 40, 59,
62); the time, place of and person responsible for the statements (Doc 32. at ¶¶ 7, 8, 21,
23, 24, 58, 62, 67, 69); the content and manner in which the statements misled Plaintiffs
(Doc. 32 at ¶¶ 3, 4, 7, 8, 22, 33, 35, 59, 69, 71, 73); and what Defendants gained by the
alleged fraud (Doc. 32 at ¶¶ 63, 65, 69, 71).[10]  The allegations establish facts related to
the timeframe of the mail and wire fraud, the respective entities responsible for the
misrepresentations in the lease agreement and invoices, the manner in which Salon
Adrian and the Nationwide Class were misled, and the ill-gotten gains acquired by
Defendants.  Accordingly, Salon Adrian has pled enough to meet the requirements of
9(b).

---

[9] Racketeering Activity includes mail fraud under 18 USC § 1341 and wire fraud under 18
USC § 1343. *See* 18 U.S.C. § 1961(1).
[10] The cited paragraphs are a non-exhaustive list.

## 2. Continuity

Defendants argue that Salon Adrian's RICO claims fail to adequately allege continuity.[11]  Specifically, they argue that Salon Adrian did not establish continuity because of Gulf Coast Town Center's foreclosure, the lender taking over the property, and the hiring of a new manager prior to the filing of the original or Amended Complaint. (Doc. 46 at 12).  As previously stated, a party must allege that the predicate acts were "of a continuing nature" to satisfy the continuity requirement.  *Jackson*, 372 F.3d 1250, 1264. In a RICO case, continuity can be pled as a "closed" or "open-ended" concept. *Id.* at 1265. Salon Adrian pleads continuity as both a closed concept that occurred over "six years" and as an open-ended concept where Defendants continue to engage in wire and mail fraud harmful to putative class members. (Doc. 31 at ¶¶ 67-69).

Open-ended continuity requires allegations that the acts were part of the defendants "regular way of doing business" or that the illegal acts threatened repetition in the future. See *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 243 (1989).  The Court agrees with Defendants to the extent that there can be no open ended continuity regarding JG Gulf Coast's involvement at Gulf Coast Town Center.[12]  On the other hand, the allegations in the Amended Complaint are not limited to Salon Adrian or even just the tenants of Gulf Coast Town Center.  Taking Salon Adrian's allegations as true, they suggest that the use of mail and wire to send tenants inflated energy bills is common for CBL, CBL Partnership, and CBL Management, continues on a daily basis, and threatens repetition in the future.

---

[11] Defendants do not argue that Salon Adrian failed to plead the predicate acts were related to one another.  Therefore, the Court will not address that issue.

[12] According to the Amended Complaint, Wells Fargo foreclosed Gulf Coast Town Center in 2015. (Doc. 32 at ¶ 13)

(Doc. 32 at ¶¶ 8, 24, 59, 62, 65, 68-69, 73).   Therefore, Salon Adrian adequately pled open-ended continuity for CBL, CBL Partnership, and CBL Management.

The Court turns to closed continuity.   Demonstrating continuity over a closed period requires proving a "series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. 229, 242 (1989).   There is no bright-line test to determine the appropriate amount of time for closed period continuity. *See, e.g., Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 593 (11th Cir. 1992) (finding that allegations of illegal activity approximating six months was too short a period of time to establish continuity); *Jackson,* 372 F.3d at 1265. (finding that nine months was too short a period); *United States v. Browne*, 505 F.3d 1229, 1263 (11th Cir. 2007) (finding evidence of mail fraud over six-year period enough to establish continuity after appeal by criminal defendants); *Coquina Invs. v. Rothstein*, No. 10-60786-CIV, 2011 WL 197241, at *5 (S.D. Fla. Jan. 20, 2011) (finding a period of four-years was sufficient to satisfy the close-ended continuity requirement). Salon Adrian's allegations regarding nineteen separate acts of mail fraud coupled with mail and wire fraud committed on a monthly basis for six years meets the close-ended continuity prong of the relationship test for the Defendants. (Doc. 32 at ¶¶ 24, 62, 68-69) (Doc. 32-2).   As such, Salon Adrian has met the continuity requirement for the Defendants collectively.

3.   *Lease Controls*

Defendants' next argument contends that Salon Adrian's RICO claim is based on an erroneous interpretation of the lease. (Doc. 46 at 12).   Yet Defendants provide no relevant authority that discusses whether a plaintiff is barred from filing a RICO claim when a lease controls.   The Court finds no case law to suggest that the lease controls

under Salon Adrian's factual allegations.  Even if this were the case, this stage is not the time to engage in contract interpretation.  By and large, courts disfavor resolving issues involving contract interpretation at the motion to dismiss stage.  *See Evanston Ins. Co. v. Gaddis Corp.*, 145 F. Supp. 3d 1140, 1145 (S.D. Fla. 2015); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1312 (S.D. Fla. 2014).  Mostly, plaintiffs are the master of their own claims and may decide under which law to advance their claim. *Cf. Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  That is to say, the Defendants cannot pick and choose which claims Salon Adrian advances.  At this point, the Court makes no ruling as to the merits of Salon Adrian's case, but simply evaluates its pleading in compliance with the established authority.

### 4.    Conspiracy under 18 U.S.C. § 1962(d)

Defendants argue that Salon Adrian failed to state a claim for conspiracy under Section 1962(d) because there are no factual allegations concerning an agreement to commit two predicate acts.  There are more ways than one to establish a claim for conspiracy.  Section 1962(d) of RICO makes it unlawful to conspire to violate any of the substantive provisions of RICO.  A "plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997) (citation and quotation omitted).  A plaintiff can establish a RICO agreement by direct evidence or "it may be inferred from the conduct of the participants." *Republic of Panama*, 119 F.3d at 950. (citing *United States v. Church*, 955 F.2d 688, 695 (11th Cir. 1992)).  A defendant's participation in a conspiracy may be inferred merely from acts

which furthered its objective. *See United States v. Kopituk*, 690 F.2d 1289, 1323 (11th Cir. 1982) (citations omitted).  Even setting aside the Amended Complaint's formulaic allegations, the allegations relating to conspiracy rise to the level of specificity required to infer a conspiracy.

Salon Adrian alleges that each Defendant acted in accordance with one another to limit a tenants' ability to audit their electrical bills and then overcharge them for electricity.  The insertion of the lease language, subsequent overcharging for electricity, and sharing of profits from the electrical cost inflation are enough to infer an agreement to participate in the conspiracy.  Defendants' alleged actions make it reasonable to infer an agreement as each action furthered the conspiracy.

> 5.    *Plaintiff's Case is a Landlord/Tenant Dispute Not a RICO Case*

Last, Defendants argue that Salon Adrian has inappropriately cast a breach of contract or a landlord tenant dispute as a RICO claim.  While Defendants cite cases that discuss the potential to abuse RICO, the analysis does not help this Court to decide whether the Amended Complaint is pled with adequate specificity. *See e.g.*, *Banco Latino Int'l v. Gomez Lopez*, 95 F. Supp. 2d 1327, 1333 (S.D. Fla. 2000) (discusses whether RICO was intended to create a new means of recovery in commercial disputes but ultimately granted a motion for summary judgment on RICO for failure to establish specific intent); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) (finding that plaintiff failed to establish continuity); *Newport Ltd. v. Sears, Roebuck & Co.*, 941 F.2d 302, 304 (5th Cir. 1991) (disposing a RICO claim with no analysis); *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001) (dismissing complaint for failure to allege a pattern of racketeering activity).

Outside addressing the pleading requirements, the Court offers no observation as to the merits of the Amended Complaint.

## C.    Florida RICO Claim

The Eleventh Circuit addressed claims brought under Florida's RICO statute by looking to "case law interpreting the Federal RICO statute." *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994). *See also All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 745 (11th Cir. 1998) ("Florida's RICO statutes have consistently been interpreted using federal RICO claims cases."). The parallel nature of Florida and Federal RICO law allows a court to apply its analysis to both claims equally. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). Defendants have not raised any additional arguments specific to Salon Adrian's Florida RICO claim. Therefore, the Court's Federal RICO analysis applies equally to Salon Adrian's Florida RICO claim. The Court finds that the Amended Complaint was pled with the adequate specificity required for Count IV.

## D.    FDUPTA Claim

In Count III, Salon Adrian claims that CBL, CBL Partnership and CBL Management violated FDUPTA. Here, Defendants argue: (1) Salon Adrian's FDUPTA claim is a shotgun pleading; (2) the express terms of the lease preclude a FDUPTA claim; (3) Salon Adrian failed to plead FDUPTA adequately; and (4) the Public Service Commission has exclusive jurisdiction over the issues outlined in the Amended Complaint. The Court addresses each argument below.

*1. Shotgun Pleading*

Defendants argue that Salon Adrian's FDUPTA claim is a shotgun-pleading as it incorporates the first fifty-two paragraphs in the Amended Complaint into every subsequent count. The Eleventh Circuit recently broke down the four crude categories of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (citations omitted).  The re-alleging of a common fact section into each count does not necessarily constitute a shotgun-pleading unless the failure to allot facts into each count materially increases the burden of understanding the factual allegations associated with each account. *See id at 1324.*  Salon Adrian pled facts common to all counts, but does not re-allege allegations from each predecessor count into the subsequent count. Furthermore, there is no increased burden in understanding the pleadings, especially

given the sectional breakdown in the first fifty-two paragraphs. The Amended Complaint is not the proverbial shotgun pleading.

### 2.  The Lease Controls for FDUPTA

Defendants argue that the lease bars Salon Adrian's FDUPTA claim because the "deceptive acts are. . . contradicted by the subject lease."   Defendants' argument is unconvincing and the case law cited by Defendants is inapposite. *See TRG Night Hawk Ltd. v. Registry Dev. Corp.*, 17 So. 3d 782 (Fla. Dist. Ct. App. 2009) (finding that a party cannot rely on misrepresentations when expressly contradicted in a later written contract); *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1285 (11th Cir. 2007) (finding that a plaintiff stated no claim for FDUPTA when defendant acted in accordance with the clear language of reservation agreement).   The Amended Complaint's allegations do not submit, nor do the Defendants, that marking up the putative class' energy costs fall within the terms of the lease.

### 3.  FDUPTA

Defendants argue that Rule 9(b) applies and Salon Adrian opposes this stance. At this juncture, the Eleventh Circuit has not decided whether Rule 9(b) applies to a FDUPTA claim.  There is a very clear split amongst Florida district courts as to whether a plaintiff needs to satisfy the heightened burden when pleading FDUPTA. *See e.g.*, *Harris v. Nordyne, LLC*, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 14, 2014) (aggregating cases which discuss the applicability of Rule 9(b)).  The Eleventh Circuit has recognized "the standard governing unfairness or deception encompasses a wider range of conduct than the standard governing fraud." *Hetrick v. Ideal Image Dev. Corp.*, 372 F. App'x 985, 992 (11th Cir. 2010).  Other courts found that "where the gravamen of the claim sounds

in fraud…the heightened requirement of Rule 9(b) would apply." *Blair v. Wachovia Mortg. Corp.*, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012).  *See also* Casey *v. Florida Coastal Sch. of Law, Inc.*, 2015 WL 10818746, at *2 (M.D. Fla. Sept. 29, 2015).  Here, Salon Adrian's FDUPTA allegations sound in fraud.  In fact, no additional factual allegations were included in the FDUPTA claim that were not included in the RICO claim. Nonetheless, the Court need not decide the issue as the Amended Complaint meets the requirements of both pleading standards.

FDUPTA protects "consumers from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce. *Schauer v. Gen. Motors Acceptance Corp.*, 819 So. 2d 809, 812 (Fla. Dist. Ct. App. 2002)*, reh'g denied, clarification granted* (June 26, 2002) (citations omitted).  To plead a claim under FDUPTA, a plaintiff must allege "a deceptive act or unfair practice, causation, and actual damages." *Economakis v. Butler & Hosch, P.A.*, 2014 WL 820623, at *2 (M.D. Fla. Mar. 3, 2014) (citations omitted).  "A deceptive act or unfair practice may be found when there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably under the circumstances, to the consumer's detriment." *Blair v. Wachovia Mortg. Corp.*, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) (citation and quotation omitted).  A plaintiff does not need to allege reliance on the part of a consumer. *See Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007) (citation omitted).

Salon Adrian met its pleading burden.  Defendants represented to Salon Adrian that its electrical rates would be no more than if purchasing electricity directly from the

utility company and then proceeded to overcharge Salon Adrian for electricity that caused Salon Adrian to pay more than was required under the lease.

> *4.  FDUPTA and Florida Statute 501.212(5)*

Defendants argue that Salon Adrian's action under FDUPTA is preempted by Florida Statute § 501.212(5).  Section 501.212(5) creates a specific exemption from suit under FDUPTA for "[a]ny activity regulated under the laws administered by the Florida Public Service Commission."   Salon Adrian counters that CBL Defendants are not regulated entities nor did they submit to the jurisdiction of the Public Service Commission ("PSC").  Further, Salon Adrian contends that the marking up of electricity is separate and distinct from the regulation and sale of electricity.

To start, the Court must determine if the CBL, CBL Partnership or CBL Management are entities regulated by the PSC, namely public utilities.[13]  A public utility is "every person, corporation, partnership, association, or other legal entity. . . supplying electricity or gas. . . to or from the public within this state."  Fla. Stat. § 366.02; *see also* Fla. Stat. § 350.111.  The Defendants cite *Fletcher Properties, Inc. v. Florida Pub. Serv. Comm'n*, as edifying on whether CBL, CBL Partnership or CBL Management are public utilities. 356 So. 2d 289, 292 (Fla. 1978).  In that case, the Florida Supreme Court denied a writ of certiorari after the PSC found that a management company was a public utility. *Id.*  The PSC considered several aspects in determining whether the management company was a public utility: providing water and sewer utility service to the indefinite public, available to all individuals without discrimination, within a given area, including

---

[13] The PSC has jurisdiction to regulate and supervise public utilities.  *See* Fla. Stat. § 366.04.

sub-vendees, tenants and other, with whom the management company had no contractual obligations.[14] *Id.* In *PW Ventures, Inc. v. Nichols*, the Florida Supreme Court found that the sale of electricity to a single customer, under contract, was enough to bring the company under the purview of the PSC when the company proposed to build a cogeneration facility. 533 So. 2d 281, 282 (Fla. 1988).

Here, the Court looks to the allegations in the Amended Complaint to determine if CBL, CBL Management, or CBL Partnership are public utilities. At this stage, the Court cannot determine whether they are covered by the PSC. Nothing suggests that CBL or CBL Partnership directly, or indirectly through a public utility, supplied electricity to the public. And based on the allegations, it is unclear if JG Gulf Coast or CBL Management provided the electricity to Gulf Coast Town Center's tenants.[15] The Court denies Defendants' Motion on this ground.

### E. Salon Adrian's Unjust Enrichment Claim

This Court will address Salon Adrian's unjust enrichment claim solely under Florida law, as the Court already dismissed the other state law claims for unjust enrichment. Defendants argue that the unjust enrichment claims fail because Florida law does not recognize a conferral of indirect benefits. Salon Adrian argues that while a direct benefit is required, there does not need to be direct contact between the parties. The Court agrees with Salon Adrian.

---

[14] It is unclear whether any single aspect was more important in the PSC's analysis.
[15] By asking the above questions, the Court does not suggest that the answers are determinative of whether CBL, CBL Properties or CBL Management are public utilities within the purview of the PSC.

"Liability in unjust enrichment has in principle nothing to do with fault. It has to do with wealth being in one person's hands when it should be in another person's." *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1341 (S.D. Fla. 2011) (quoting *Guyana Tel. & Tel. Co. v. Melbourne Int'l Commc'ns, Ltd.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003)). To state a claim for unjust enrichment

> a plaintiff must plead the following elements: 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it."

*Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1059 (Fla. Dist. Ct. App. 2006) (citations omitted).  "[A] plaintiff must allege that it directly conferred a benefit on defendant; an indirect benefit is insufficient." *Swiss Watch Int'l, Inc. v. Movado Grp., Inc.*, No. 00-7703-CIV, 2001 WL 36270980, at *5 (S.D. Fla. June 21, 2001).

While a direct benefit is required, the "direct benefit element of an unjust enrichment claim may be satisfied where a benefit is conferred through an intermediary." *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1368 (S.D. Fla. 2015); *see also Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011).  Salon Adrian alleges that it made payments to either CBL or CBL Management for electrical costs. (Doc. 32 at ¶ 2).  CBL, CBL Management and CBL Partnership received and continue to receive payments for inflated electricity costs.  (Doc. 32 at ¶¶ 77-78).  Salon Adrian also alleges that they received "profits derived from marking up…energy charges." (Doc. 34 at ¶ 78).  Even if the payments or profits were conferred through an intermediary, Salon Adrian has met its burden to pled direct benefit.

Next, Defendants argue that the lease shows there was no understanding between Salon Adrian and the Defendants regarding the benefits conferred. Yet "understanding" between the parties is not an element that needs to be pled. *See Della Ratta,* 927 So. 2d at 1059. To the extent knowledge is required, Salon Adrian has met its burden. (Doc. 32 at ¶ 78)

Finally, Defendants argue that the claim for unjust enrichment fails as it cannot be maintained on matters governed by a contract. They rely on *Rushing v. Wells Fargo Bank,* where the court dismissed an unjust enrichment claim when the plaintiff and defendant were in a contractual relationship. 752 F. Supp. 2d 1254, 1265 (M.D. Fla. 2010). Unlike that case, it is not alleged here that CBL, CBL Partnership or CBL Management were in a contractual relationship with Salon Adrian. Florida courts have refused to dismiss unjust enrichment counts where no contractual relationship existed between the parties. *See Williams v. Bear Stearns & Co.,* 725 So. 2d 397, 400 (Fla. Dist. Ct. App. 1998). While it is true that an equitable remedy generally cannot be pled if an adequate legal remedy exists, this is not the case for unjust enrichment in Florida. *Id.*; *see also State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.,* 427 F. App'x 714, 722 (11th Cir. 2011), *rev'd in part sub nom. State Farm Mut. Auto. Ins. Co. v. Williams,* 824 F.3d 1311 (11th Cir. 2014). There is no dispute that a contractual relationship between Salon Adrian and JG Gulf Coast existed, but that contract does not bar Salon Adrian's unjust enrichment claim against CBL, CBL Partnership, or CBL Management. Therefore, the Defendants' motion is denied.

**F.      Alter Ego or Veil Piercing**

To the best of the Court's understanding, Defendants offer conclusory arguments as to alter ego and veil piercing.  According to Defendants, Salon Adrian's causes of action are based solely on "the alleged nonperformance of certain terms in the JG Gulf Coast lease," and thus Salon Adrian does not have a direct claim against CBL, CBL Partnership or CBL Management.  (Doc. 46 at 31).   Defendants argue that Salon Adrian cannot disregard JG Gulf Coast's corporate status without pleading alter ego, veil piercing or some other form of relief. (Doc. 46 at 31).  In response, Salon Adrian argues that its allegations are sufficient and there is no need to plead veil piercing or alter ego. Defendants' reply does little to clarify the arguments in this area.

At this point, the Court is unsure as to what claims Defendants seek to dismiss with this argument.  The only guidance Defendants offer the Court is that they seek dismissal of "[p]laintiff's claims against CBL and CBL Partnership, to the extent they are rooted in the performance or nonperformance of certain lease terms by JG Gulf Coast." (Doc. 46 at 34).  This argument is neither persuasive nor comprehensive.

**G.      Implied Covenant of Good Faith and Fair Dealing**

Defendants argue that Salon Adrian's claim for breach of implied covenant of good faith and fair dealing fails to state a claim as the allegations are duplicative of its breach of contract claim.  "Under Florida law, the implied covenant of good faith and fair dealing is a part of every contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999) (citing *Cty. of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1050 (Fla. 1997).  A covenant of good faith and fair dealing is limited in two ways: (1) "a claim for beach of good faith and fair dealing must be accompanied by an allegation that an express term of

the contract was breached"; and (2) "the implied obligation of good faith cannot be used to vary the terms of an express contract." *Mount Sinai Med. Ctr. of Greater Miami, Inc. v. Heidrick & Struggles, Inc.*, 329 F. Supp. 2d 1309, 1312 (S.D. Fla. 2004), *aff'd*, 188 F. App'x 966 (11th Cir. 2006) (citations and internal quotations omitted).  Furthermore, a plaintiff cannot advance a claim for breach of the implied covenant of good faith and fair dealing when the allegations underlying the claim are duplicative to the allegations supporting the breach of contract claim. *See Bradman v. Mental Health Network, Inc.*, No. 08-61376-CIV-MARRA, 2008 WL 5110525, at *2 (S.D. Fla. Dec. 2, 2008) (citations omitted); *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, No. 08-81442-CIV, 2009 WL 2729954, at *5 (S.D. Fla. Aug. 25, 2009) (noting that the factual allegations underlying the breach of implied covenant of good faith and fair dealing was based on the defendant's failure to perform its obligations under the contract and therefore the claim was not advanced).  The covenant acts as a gap-filling default rule where the terms of the contract vest a party with substantial discretion, requiring that party to act in a commercially reasonable manner and limiting its ability to act capriciously to contravene the reasonable expectations of the contract counterparty. *See Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1218 (S.D. Fla. 2015) (citations omitted).

While Salon Adrian alleges breach of specific provision of the lease, its allegations are for the most part duplicative for both its breach of contract and its implied covenant of good faith and fair dealing Counts.  The factual allegations underlying both claims are based on JG Gulf Coast charging tenants more for electricity than JG Gulf Coast actually paid to the local electric utility.  The mere rearranging of a few words does not change the duplicative nature of the counts.

Accordingly, it is now

**ORDERED:**

(1) Defendants' Motion to Dismiss (Doc. 46) is **GRANTED in part and DENIED in part.** The Court grants the motion as follows: (a) Count II is dismissed only to the extent Salon Adrian seeks to bring unjust enrichment claims under state laws other than Florida; and (b) Count VI is dismissed in its entirety.

(2) Salon Adrian may file a second Amended Complaint on or before April 24, 2017, that complies with this Order.

**DONE** and **ORDERED** in Fort Myers, Florida this 10th day of April, 2017.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record