UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| Wave Lengths Hair Salons of Florida, Inc., on behalf of itself and all others similarly situated, d/b/a Salon Adrian, | Case No. 2:16-cv-206-FtM-PAM-MRM |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| CBL & Associates Properties, Inc. CBL & Associates Management, Inc., CBL & Associates Limited Partnership, and JC Gulf Coast Town Center, LLC, | |
| Defendants. | |

This matter is before the Court on Plaintiff's Motion for Class Certification and the parties' Motions to Exclude the opinions of four expert witnesses. For the following reasons, the Motion for Class Certification is granted in part and denied in part, and the Motions to Exclude are denied.

**BACKGROUND**

This case involves alleged overcharges for electricity in shopping malls. Plaintiff Wave Lengths Hair Salon of Florida d/b/a Salon Adrian is a tenant in Gulf Coast Town Center, a mall in Ft. Myers, Florida, that was owned and managed by Defendant CBL & Associates Properties, Inc., and its related Defendant entities (collectively, "CBL"). Wave Lengths alleges that it was overcharged thousands of dollars, and that collectively, CBL's tenants were overcharged for more than 190 million kilowatt hours (kWh) of

electricity as a result of the alleged scheme described below.

Most tenants at malls CBL managed signed a form lease agreement that provided that "Tenant shall not be charged more than the rates it would be charged for the same [electric] services if furnished directly to the Leased Premises by the Local Utility Company . . . ." (Pl.'s Ex. 10 at 7, § 2.5.) Rider A of the lease provides for the calculation of electricity charges, and again provides that the rate "shall not exceed the rate (including taxes) which Tenant as the operator of a separately metered and billable facility would otherwise pay . . . had Tenant purchased such electricity directly from the Local Utility Company." (Id. at 29, Rider A.)

CBL contracts with an electrical consulting company called Valquest to perform "surveys" of electrical usage at CBL's properties. CBL uses those surveys to charge its tenants for electricity. According to Plaintiff, CBL and Valquest intentionally engaged in a scheme to inflate both the usage and the rate for that usage. Indeed, Plaintiff cites to evidence that Valquest and CBL knew what they were doing was wrong and potentially illegal.

Plaintiff's claims include claims under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), Florida RICO, unjust enrichment, and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Plaintiff seeks certification of a nationwide class for the federal RICO claim, and a Florida sub-class for the remaining claims. The proposed nationwide class definition is:

> All tenants at shopping malls managed by CBL & Associates Management, Inc., whose electricity charges were determined based on a Valquest survey within the applicable limitations period.

The Florida subclass is defined as:

> All tenants at shopping malls in Florida managed by CBL & Associates Management, Inc., whose electricity charges were determined based on a Valquest survey within the applicable limitations period.

(Pl.'s Supp. Mem. (Docket No. 140) at 1.) Excluded from these classes are Defendants, their affiliates and related companies, their directors, corporate officers, and their immediate family members, and any government entity. (Id. at 1 n.1.)

## DISCUSSION

### A.  Class Certification Standard

A plaintiff seeking to certify a class must initially establish that:

> (1) the class is so numerous that joinder of all the members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If Rule 23(a)'s threshold criteria are met, the plaintiff must then show that the action is maintainable under one of the subsections of Rule 23(b). Plaintiff seeks to maintain a class under Rule 23(b)(3).

Plaintiff bears the burden of establishing each prerequisite element to certification. See Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982). In rigorously analyzing whether Plaintiff has met its burden, the Court "should not determine the merits" of the claim but "can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1188 n.15 (11th Cir. 2003); see also Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) (noting that analysis of a class certification motion

3

"generally involves considerations that are enmeshed in the factual and legal issues comprising plaintiff's cause of action") (quotation omitted). Ultimately, because of the fact-specific quality of the analysis, the Court exercises broad discretion in determining whether to certify a particular class under Rule 23. See Reiter v. Sonotone Corp., 442 U.S. 330, 345 (1979); Cooper v. Southern Co., 390 F.3d 695, 711 (11th Cir. 2004).

**B.     Rule 23(a)**

Defendants do not mention Rule 23(a)'s requirements, thus apparently conceding that Plaintiff has established those requirements. Nevertheless, because the Court must conduct an independent rigorous analysis, the Court discusses each below.

**1.     Numerosity**

Rule 23(a) requires that a class "be so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This rule imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." Schojan v. Papa Johns Int'l, Inc., 303 F.R.D. 659, 664 (M.D. Fla. 2014) (quoting Manno v. Healthcare Revenue Recovery Grp., LLC, 289 F.R.D. 674, 684 (S.D. Fla. 2013)). Defendants do not take issue with Plaintiff's assertion that there are approximately 3,300 putative class members. This is sufficient to meet the numerosity requirement.

**2.     Commonality**

Rule 23(a) also requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requires at least one legal or factual issue "susceptible to class-wide proof." Williams v. Mohawk Indus., 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001)). "Only one

issue is required, though, and the existence of even one common question of law or fact is 'sufficient to satisfy the [l]ow hurdle of Rule 23(a)(2).'" Mills v. Foremost Ins. Co., 269 F.R.D. 663, 671 (M.D. Fla. 2010) (quoting Williams, 568 F.3d at 1356); see also Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1268 (11th Cir. 2009) (describing the 23(a)(2) prerequisite as a "relatively light burden"). Commonality may be satisfied "even with some factual variations among class members." Schojan, 303 F.R.D. at 665.

As noted, Defendants apparently concede that Plaintiff has established commonality. There are common questions of both law and fact here, including the alleged scheme to defraud all class members by inflating both energy use and the price of that energy. This element is satisfied.

**3.     Typicality**

Rule 23(a) also requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "The claim of a class representative is typical if 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" Williams, 568 F.3d at 1357 (quoting Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984)). To establish typicality, "there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." Kornberg, 741 F.2d at 1337. "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." Id.

5

Again, Defendants implicitly concede that Plaintiff is a typical class representative. And as a tenant who signed the challenged form lease and was a victim of the alleged scheme to defraud, Plaintiff has sufficiently established typicality.

### 4. Adequacy

Adequacy requires Plaintiff to establish that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Given Defendants' lack of opposition on this point, Plaintiff has established adequacy of representation.

## C. Rule 23(b)(3)

Plaintiff seeks to maintain a class under Rule 23(b)(3). This subsection requires that: (1) questions of law or fact common to the members of the class predominate over any questions affecting individual members; and (2) a class action is the superior method of adjudicating the controversy.

### 1. Predominance

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." Williams, 568 F.3d at 1357 (citation and quotations omitted). The predominance inquiry is more demanding than the commonality requirement of Rule 23(a). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997).

> [I]f common issues truly predominate over individualized issues in a lawsuit, then "the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered." Put simply, if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests

>that individual issues (made relevant only through the inclusion of these new class members) are important. . . .   If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004), abrogated in part on other grounds, Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008).  To determine whether class or individual issues predominate, a court must take into account the claims, defenses, relevant facts, and applicable substantive law to assess the degree to which resolution of classwide issues will further each individual class member's claim against the defendant.  Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co., 458 F. App'x 793, 794 (11th Cir. 2012) (citing Klay, 382 F.3d at 1254).   Common issues will not predominate over individual questions if the "resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues."  Bussey v. Macon Cty. Greyhound Park, Inc., 562 F. App'x 782, 789 (11th Cir. 2014) (quotation omitted).  Moreover, certification is inappropriate if the "plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims."  Id. (quoting Klay, 382 F.3d at 1255).

CBL does not address the first commonality among the putative class members: the fact that all were tenants whose electricity charges were billed based on Valquest surveys.  CBL instead contends that some of its tenants' leases differed in material ways from Plaintiff's lease, including that some leases allowed CBL to average electricity usage and charge using surveys.  But Plaintiff counters that no class members used the other

7

types of leases to which CBL points. Plaintiff has proffered significant evidence that CBL acknowledged that all class members' leases had essentially identical utility provisions. Moreover, whether the leases allowed surveys to determine utility charges is irrelevant, because none of the leases allowed CBL to charge its tenants more than their actual use would support.

CBL also contends that there may be class members who negotiated separately with CBL regarding electricity. But now is the time for evidence, not argument, and CBL cites no record evidence to support this hypothesis.

CBL next argues that the leases contained a requirement that a tenant must give written notice regarding disputes. According to CBL, the Court must determine whether any putative class member gave such notice, and such individualized inquiries preclude a finding of predominance. Plaintiff contends that the lease requires notice only when a tenant disputes a payment and that, in any event, the notice requirement helped perpetuate the fraud because it also required tenants to waive audit rights and thus tenants were prevented from discovering the alleged fraud. Whether notice was required in the first instance for the claims Plaintiff raises is more properly addressed in a dispositive motion and will not prevent certification of a class.

To the extent there is a statute of limitations issue, as CBL argues, that is also more properly resolved in a dispositive motion. In fraud cases like this one, the statute of limitations is often tolled, and regardless, the class members claim damages arising from conduct within the four years before suit was filed, which is undisputedly timely. Statute of limitations issues do not defeat predominance.

8

      a.    <u>RICO</u>

CBL also argues that proximate causation is inappropriate for classwide treatment. Plaintiff claims that CBL and Valquest together were an "enterprise" engaged in a "pattern of racketeering activity" under federal and state RICO. 18 U.S.C. § 1962(a). The racketeering activities alleged were mail and wire fraud—mailing lease agreements and inflated electricity bills and accepting tenants' inflated payments through the mail or wires. In addition, Plaintiffs contend that CBL's actions constituted violations of state laws, specifically laws that prohibit re-selling electricity for more than the reselling entity paid for that electricity.

Plaintiff alleges a nationwide conspiracy between CBL and Valquest to inflate CBL's tenants' utility bills.

> [T]he plaintiffs' RICO claims are not simply individual allegations of [overcharges] lumped together, and the allegation of an official corporate policy or conspiracy is not simply a piece of circumstantial evidence being used to support such individual [overpayment] claims. Instead, the very gravamen of the RICO claims is the 'pattern of racketeering activities' and the existence of a national conspiracy

to inflate tenants' utility bills. <u>Klay</u>, 382 F.3d at 1257.

The facts Plaintiff alleges "are not facts from which jurors will be asked to infer the commission of wrongful acts against individual plaintiffs; these very facts constitute essential elements of each plaintiff's RICO claims." <u>Id.</u> Indeed, the alleged policy behind the electricity-billing scheme "constitute[s] the very heart of the plaintiffs' RICO claims here, and would necessarily have to be re-proven by every plaintiff if each [plaintiff's] claims were tried separately." <u>Id.</u>

9

Similarly, Plaintiff's burden to prove reliance does not defeat class certification here. "[T]he simple fact that reliance is an element in a cause of action is not an absolute bar to class certification." Id. at 1258. Especially where, as here, the common issues of fact—the alleged scheme and conspiracy regarding inflating utility usage and costs—"are quite substantial . . . [t]hey would tend to predominate over all but the most complex individualized issues." Id. at 1258-59. Moreover, because the misrepresentations alleged were essentially identical for each class member, "the circumstantial evidence that can be used to show reliance is common to the whole class." Id. at 1259. "It does not strain credulity to conclude that each plaintiff, in entering into [leases] with the defendants, relied upon the defendants' representations and assumed they would be [charged] the amounts [the leases allowed]." Id. Because reliance may be proved by common evidence, individualized reliance issues do not predominate over common questions.

Finally, CBL contends that the class's damages are not susceptible of class-wide proof. This is likely true, because each class member's exact damages will depend on the electricity the tenant actually used, how much that electricity would have cost, and how much the tenant was charged. But individual questions of damages do not preclude certification of fact and liability issues. Carriuolo v. Gen. Motors Co., 823 F.3d 977, 988 (11th Cir. 2016). CBL argues that the Supreme Court's decision in Comcast Corp. v. Behrend, 569 U.S. 27 (2013), forecloses class actions when there are individual damages questions. But that is not what Comcast held. Rather, Comcast reversed a class-certification order that accepted a theory of damages that was distinct from the class's theory of injury. "Comcast simply requires that 'any model supporting a plaintiff's

damages case must be consistent with its liability case.'" Carriuolo, 823 F.3d at 988 (quoting Comcast, 569 U.S. at 35). Plaintiff's damages theory here is consistent with its theories of liability, and "there is no evidence to suggest that the class-wide adjudication of . . . liability will be subsumed in or overwhelmed by an individualized damages inquiry." Id. at 989. Plaintiff's request for class certification thus does not run afoul of Comcast.

As the Eleventh Circuit has emphasized, "[c]ommon issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . relief." Klay, 382 F.3d at 1255 (quoting Ingram v. Coca-Cola Co., 200 F.R.D. 685, 699 (N.D. Ga. 2001)). Even resolution of the underlying RICO issues will have a direct impact on establishing liability for each class member. Plaintiff has established predominance for its RICO and Florida RICO claims.

      b.    FDUTPA

The analysis is the same with regard to the Florida class's FDUTPA claim. This claim is even more appropriate for class treatment because the FDUTPA does not require proof of actual reliance. See Carriuolo, 823 F.3d at 984 (citing Davis v. Powertel, Inc., 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000)). Rather, the question is whether the conduct at issue would deceive an objective reasonable consumer. Fitzpatrick v. Gen. Mills, Inc., 635 F.3d 1279, 1283 (11th Cir. 2011). This question is undoubtedly common to the entire class.

To state a claim for a violation of FDUTPA, "Plaintiff must establish (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Justice v. Rheem Mftg. Co.,

318 F.R.D. 687, 696 (S.D. Fla. 2016). Although Defendants argue that there are individual issues regarding the alleged deceptive act, Defendants focus their argument on the causation element. According to Defendants, the Court is required to examine individual leases and whether each tenant would have decided to enter into a lease had it known about the alleged overcharging. But this contention is directly contrary to the FDUPTA's focus on the objective reasonable consumer, rather than on individual reliance. While their must be a nexus between the deceptive act and damages, that nexus need not be in the form Defendants urge. And it goes without saying that any objective reasonable business owner is not likely to enter into a lease if that lease includes charges for electricity that far outpace the business's electric use. Even tenants whose leases allowed for electricity bills based on surveys would not have expected the scheme Plaintiff alleges here. Plaintiff has sufficiently established that common issues predominate with respect to its FDUTPA claim.

    c. <u>Unjust Enrichment</u>

Unjust enrichment requires proof of "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1270 (11th Cir. 2009) (quotation omitted). The unjust-enrichment inquiry is necessarily individual, and the Eleventh Circuit has noted that court "have found unjust enrichment claims inappropriate for class action treatment." <u>Vega</u>, 564 F.3d at 1274. Whether the circumstances of any individual tenant make it inequitable for CBL to have

12

retained the alleged benefit is an individual inquiry that is not appropriate for class-wide resolution.  Thus, the Court declines to certify an unjust-enrichment class.

### 2. Superiority

The second prong of Rule 23(b)(3) requires Plaintiff to show that "a class action is superior to other available methods fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  For this prong, the focus "is not on the convenience or burden of a class action suit per se, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."  Klay, 382 F.3d at 1269.  As a result, the predominance analysis "has a tremendous impact on the superiority analysis of this [p]art for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims."  Id.  Rule 23(b)(3) provides four specific non-exclusive considerations pertinent to these findings:

> (A)   the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

CBL does not directly challenge the superiority prong of the analysis.  Instead, CBL focuses on whether the class is ascertainable and can be objectively defined, and whether Plaintiff is an adequate class representative.  The ascertainability and class-

definition argument is without merit, given that the class is only tenants whose utility bills were calculated based on a Valquest survey. That should be easily ascertainable from CBL's records. And CBL's objection to Plaintiff as a class representative are equally specious. "[A] party's claim to representative status is defeated only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy." Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1280 (11th Cir. 2000). CBL's general assertion that Plaintiff is an inadequate representative does not demonstrate any conflict, much less any fundament conflict, between Plaintiff and the class.

**D.    Daubert**

Rule 702 of the Federal Rules of Evidence permits the admission of expert testimony if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the method[ ] by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1107 (11th Cir. 2005) (quoting United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004)). "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262.

Under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993), once a witness qualifies as an expert, the Court has the obligation to act as a gatekeeper, screening the expert's testimony to ensure that it is not only relevant but reliable. See also

14

Allison v. McGhan Med. Corp., 184 F.3d 1300, 1310 (11th Cir. 1999). Moreover, the barriers to the admission of expert testimony "are even more relaxed in a bench trial situation, where the judge is serving as factfinder and we are not concerned about 'dumping a barrage of questionable scientific evidence on a jury.'" United States v. Brown, 415 F.3d 1257, 1268 (11th Cir. 2005) (quoting Allison, 184 F.3d at 1310). And the Court's "gatekeeper role . . . is not intended to supplant the adversary system . . . : '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Allison, 184 F.3d at 1311 (quoting Daubert, 509 U.S. at 596).

**1. Plaintiff's Motions**

a. Dr. Christopher Knittel

Plaintiff seeks to exclude the testimony of Defendants' economics and energy markets expert Dr. Christopher Knittel. Dr. Knittel, a professor at MIT, offers opinions regarding class-certification factors, in particular whether there are material differences in the lease agreements class members signed so that there is no predominance or commonality. Plaintiff claims that Dr. Knittel evaluated less than 1% of the class's leases, and that CBL chose the leases it gave Dr. Knittel to support its theory, ignoring all of the leases that were similar to or the same as Plaintiff's lease.

Because the Court has concluded that class certification is appropriate, this Motion is moot and will be denied as such.

b. <u>Paul Habibi</u>

Plaintiff also seeks to exclude the testimony of one of Defendants' damages experts, Paul Habibi. This expert, too, is propounded in opposition to class certification. Thus, Plaintiff's challenges to his testimony are moot.

**2. Defendants' Motions**

a. <u>Barry Mukamal</u>

Defendants seek to exclude Plaintiff's damages expert Barry Mukamal, claiming that his method of computing class-wide damages is fatally flawed and wholly unreliable.

Defendants first argue that Mr. Mukamal assumes that the rates CBL paid for electricity should have been passed through to its tenants. Defendants assert the leases only require that the rate be the same that the tenant would have received had it purchased electricity separately from the utility company. This oversimplifies the lease terms, however, and ignores the interplay of the lease terms and state utility regulations, at least some of which may require exactly the rate pass-through that Mr. Mukamal opines about. To the extent Defendants are successful in establishing that the rates they charged were permissible under the leases and/or state laws, the Court can disregard this portion of Mr. Mukamal's opinion. It is not a reason to exclude him.

Moreover, as Plaintiff points out, Defendants criticize Mr. Mukamal's assumptions regarding energy rates and energy usage, but the data Mr. Mukamal used came directly from Defendants' documents, in particular the statements Valquest supplied to CBL. To the extent that Mr. Mukamal engages in any speculation, that is a matter for cross-examination.

16

b.   Dr. John O'Brien

Defendants do not clearly describe the scope of Dr. O'Brien's testimony. He apparently will opine that Valquest inflated CBL's tenants estimated energy usage by including electric equipment that tenants did not actually use. Thus, for example, Dr. O'Brien contends that Valquest added food warmers to a restaurant tenant's equipment list even though the restaurant had not included that equipment in its own list. Defendants argue that Dr. O'Brien mischaracterized the testimony with regard to a single tenant and has no evidence that this ever happened with respect to any other tenants. Thus, according to Defendants, Dr. O'Brien's broad "Valquest did this routinely" opinion is without basis. But whether the testimony lacks foundation is something to be explored on cross-examination and is not a reason to exclude the testimony.

Next, Defendants contend that Dr. O'Brien impermissibly testifies that CBL should have reconciled its tenants' energy accounts on a yearly basis, to give tenants the difference between the Valquest survey and their actual usage. According to Defendants, because Dr. O'Brien is not an accountant, he is not qualified to testify as to what sort of reconciliations were required. But Dr. O'Brien does not opine regarding legal requirements, rather, he opines that CBL's failure to do an annual reconciliation meant that CBL cheated its tenants. CBL's argument provides no reason to exclude Dr. O'Brien's testimony.

Finally, Defendants argue that Dr. O'Brien offers opinions on the meaning and interpretation of state utility laws and regulations. What laws require is a matter for the Court to determine, but if Dr. O'Brien's testimony at trial starts to stray into this area,

17

Defendants can object. Dr. O'Brien can testify regarding what states' provisions require landlords to charge tenants only what the landlord is charged for electricity, and which tenants would be subject to those laws. Defendants' Motion is denied.

**CONCLUSION**

Plaintiff has established that class certification is appropriate on the class's claims under RICO, Florida RICO, and FDUTPA. Class certification is not warranted on the claim of unjust enrichment. Accordingly, **IT IS HEREBY ORDERED that**:

1. Plaintiff's Motion for Class Certification (Docket No. 140) is **GRANTED in part** and **DENIED in part**;

2. With the exclusions noted above, the Court **CERTIFIES** the following class for prosecution of the federal RICO claim:

   All tenants at shopping malls managed by CBL & Associates Management, Inc., whose electricity charges were determined based on a Valquest survey within the applicable limitations period.

3. With the exclusions noted above, the Court **CERTIFIES** the following class for prosecution of the Florida RICO and FDUTPA claim:

   All tenants at shopping malls in Florida managed by CBL & Associates Management, Inc., whose electricity charges were determined based on a Valquest survey within the applicable limitations period.

4. Plaintiff's Motions to Exclude (Docket Nos. 196, 197) are **DENIED as moot**; and

5. Defendants' Motions to Exclude (Docket Nos. 200, 201) are **DENIED**.

Dated:  January 7, 2019

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge