UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Wave Lengths Hair Salons of
Florida, Inc., on behalf of itself
and all others similarly situated, d/b/a
Salon Adrian,

Case No. 2:16-cv-206-FtM-PAM-MRM

Plaintiff,

v.

**MEMORANDUM AND ORDER**

CBL & Associates Properties, Inc.
CBL & Associates Management, Inc.,
CBL & Associates Limited
Partnership, and JC Gulf Coast Town
Center, LLC,

Defendants.

_____

This matter is before the Court on the Plaintiff Class's Unopposed Motion for

Preliminary Approval of Class Settlement, for Certification of Settlement Class, and Notice

to the Settlement Class ("Motion").  (Docket No. 298.)  The Class moves for Preliminary

Approval of the Settlement Agreement ("Settlement" or "Agreement")[1] attached as Exhibit

1 to the Motion, which will resolve all claims against Defendants (collectively, "CBL") in

this lawsuit.  As described in further detail below, the Settlement provides substantial relief

to the Settlement Class, and its terms are within the range of reasonableness and consistent

with applicable case law.  Consequently, the Court grants Preliminary Approval, certifies

the Settlement Class, and approves the Proposed Notice Program.

_____

[1] All capitalized defined terms used herein have the same meanings ascribed in the Agreement.

## I.    <u>**INTRODUCTION**</u>

On March 16, 2016, Plaintiff Salon Adrian sued on behalf of itself and all others similarly situated who had their electric charges determined by a Valquest survey at malls owned or managed by CBL.  Plaintiff alleged CBL and Valquest engaged in a conspiracy to defraud CBL tenants by marking up their electric rates and inflating their kilowatt hour charges ("kWh").  Plaintiff claimed CBL's conduct violated, among others, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), and Florida RICO.  CBL vigorously denied the Plaintiff's claims and defended against the lawsuit.

The Parties have actively litigated this lawsuit for more than three years.  The litigation was hard-fought.  The Parties engaged in significant motion practice and extensive formal discovery, including twelve depositions and the production of more than two million pages of documents and electronically stored information.  The lawsuit involved divergent positions on several fundamental legal and factual questions, including whether the predominance requirement for class certification was satisfied, whether the Class was ascertainable, whether equitable tolling applied allowing the Class to recover more than one year of damages under the terms of CBL's leases, whether the Class's damages model correctly calculated damages, and whether the Class could meet all of the required elements for RICO, Florida RICO, and FDUTPA.

The Parties mediated this case three times before two experienced mediators.  Those mediation discussions continued after the Court's Calendar Call on January 9, 2019.  On Tuesday, March 19, 2019, approximately two weeks before trial, the Parties reached

agreement on the material terms of a Settlement that was approved by CBL's board of directors.  Over the next month, the Parties had numerous discussions finalizing the terms of the Settlement Agreement.  Once those additional terms were agreed, the parties finalized and executed the Settlement Agreement on April 17, 2019.  The Class filed its Motion that same day.

Under the terms of the Settlement, Settlement Class Members who do not opt out will be provided up to 100% of their alleged losses based on certain estimates of damages. Settlement Class Members who are Current Tenants will automatically receive credits against their rent for the Settlement Amount calculated for them over a five-year period following the Effective Date.  Former Tenants, including tenants of malls that CBL no longer manages, may submit by mail a claim form with the following information in order to receive a cash payment equal to their Settlement Amount: (1) Tenant's name and DBA (if any); (2) mall location; (3) store identifier (if any); (4) dates of tenancy; (5) and confirmation of their ownership of the claim.  CBL's and Valquest's records will be used to determine the amount of each Settlement Class Member's Settlement Award.  The Settlement Administrator, in accordance with the Agreement, will calculate what is owed to each Settlement Class Member.

## II.     STATEMENT OF FACTS

### A.     FACTUAL BACKGROUND

#### 1.     Procedural History

Plaintiff brought this lawsuit seeking monetary damages based on its claim that CBL marked up the electric rate it charged its tenants and intentionally inflated the number of

kWhs it billed them.  The Plaintiff alleged that as a result of CBL's deception, the Class paid tens of millions of dollars in overpayments for electricity to CBL.

CBL vigorously denied the Class' allegations of wrongdoing.  CBL consistently defended its conduct by, *inter alia*, arguing that the Class' leases permitted CBL to charge a higher electric rate than it paid and permitted it to charge based off an estimate, that the electric rates billed the tenants followed the local utility rates they would be charged as a standalone entity, that tenants obtained the full benefit of their bargain under the terms of the leases, and that CBL complied with all applicable laws.  CBL also advanced a variety of affirmative defenses.

On September 6, 2016, CBL moved to dismiss the Class Complaint and moved to strike the nationwide class allegations contained in the Complaint.  (Docket No. 46.)  On April 11, 2017, the Court denied, in part, CBL's Motion to Dismiss.  (Docket No. 80.) After the Court entered the Stipulated Confidentiality Agreement and Protective Order ("ESI Order") on November 2, 2017, the Parties engaged in significant and substantial discovery.

During the course of discovery, CBL produced more than 1.8 million pages of documents.  In addition, more than 70 third parties were served with subpoenas resulting in more than 200,000 pages of additional documents produced. Class Counsel created a large document review team responsible for reviewing and analyzing the documents.  To make the review and subsequent litigation more efficient, Class Counsel established coding procedures for electronic review of the documents, and team members remained in constant contact with each other to ensure that all Plaintiff's counsel became aware of significant

emerging evidence in real time.  During the litigation, Class Counsel deposed 12 party and non-party witnesses, and CBL deposed the Class Representative and the Class's experts.

On January 7, 2019, this Court granted, in part, the Motion to Certify the Class. (Docket No. 242.)  Shortly thereafter, this Court approved a class notice program.  (Docket No. 280.)  Class Counsel provided notice to more than 4,800 potential Class members through postcard notice.  The Court on January 23, 2019, denied CBL's Motion for Summary Judgment.  (Docket No. 251.)  The Parties attended the Court's January 9, 2019, pretrial conference and calendar call, and trial was scheduled to begin on April 2, 2019.

### 2. <u>Settlement Negotiations</u>

The Parties mediated on July 26, 2017, with David Geronemus in New York City. The Parties were unable to resolve the dispute at that mediation.  On September 9, 2018, Class Counsel and CBL mediated with Rodney A. Max of Upchurch, Watson, White & Max, a Court-approved mediators.  The Parties were once again unable to reach a settlement during that mediation.  The Parties continued their settlement discussions and mediated again with Mr. Max on March 14, 2019.  Following 18 hours of negotiations, on March 15, 2019, the Parties executed a Settlement Term Sheet memorializing the material terms of the Settlement, which was subsequently incorporated into the Settlement Agreement and Release filed by the Parties.

### B. <u>SUMMARY OF THE SETTLEMENT TERMS</u>

The Settlement's terms are detailed in the Settlement Agreement attached as Exhibit 1 to the Motion.  (Docket No. 298.)  The following is a summary of the material terms of the Settlement.

### 1.   The Settlement Class

The proposed Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal

Rules of Civil Procedure.  The Settlement Class is defined as:

> All tenants at shopping malls managed by CBL & Associates
> Management, Inc., whose electricity charges were determined based
> on a Valquest survey from January 1, 2011 through the April 24, 2019.
>
> Excluded are governmental agencies or entities and any tenant who
> excluded themselves, by location, following the March 2019 Class
> Notice.

(Ex. 1 at10).

This is materially the same class that this Court previously certified.[2]

### 2.   Monetary Relief for the Benefit of the Class

The Settlement creates a common fund of $90 million ("Settlement Fund") for the

Settlement Class.  The Settlement Fund will be used to pay Settlement Class Members'

damages in individual Settlement Awards (both the Current Tenant rent credits and the

Former Tenant cash payments), the Class's costs and attorney's fees, the costs of notice

and claims administration, and an incentive award to Plaintiff.  Class Members will be

eligible to receive up to 100% of their damages based on estimates of damages of

$60,000,000.  In the event that there are any funds left after: (1) payment of Current Tenant

rent credits; (2) payment of all Former Tenant claims; (3) payment of all attorneys' fees

and costs, those funds will revert to CBL.  Settlement Class Members who are Former

Tenants will have up to 30 days after the Court's Final Approval Hearing to submit their

---

[2] The previous Class definition was: "All tenants at shopping malls managed by CBL & Associates
Management, Inc., whose electricity charges were determined based on a Valquest survey within
the applicable limitations period."  (Docket No. 242 at 18.)

claims to the Settlement Administrator.  All Settlement Class Members will have 30 days from the date of the mailing of notice to the Settlement Class to object to, or opt out of, the Settlement.

Settlement Class Members who are Current Tenants will not have to submit a claim form of any kind to receive their benefits under the Settlement.  Current Tenants will automatically receive a rent credit not less than quarterly for five years totaling their Settlement Award.  If Current Tenants allow their lease to naturally expire, any remaining credits due will be paid in cash not less than annually over the remainder of the five-year period.  Former Tenants need provide only basic information when submitting a claim and will be able to submit claims through the United States mail.  Specifically, Settlement Class Members who are Former Tenants will only be required to provide their name and any DBA, mailing address for payment of the settlement proceeds, the address of the mall where it rented space, the dates of rental, and any unique identifier used by the Tenant to identify its store location (and those who have been in bankruptcy or request payment to a different individual or entity will have to provide some modest additional information).  The Claims Administrator may compare the claims submitted by the Settlement Class Members with CBL's records to ensure accuracy.

Thus, all Settlement Class Members will be eligible to receive a distribution from the Settlement Fund.  The calculation used to determine the Settlement Class Members' Settlement Award is described in detail in the Agreement.  (Docket No. 298, Ex. 1 at § 2.2.)

### 3. **Releases**

In exchange for the benefits the Settlement confers, all Settlement Class Members

who do not opt out will release the Defendants, and all of their past, present, and future parents, subsidiaries, sister corporations, holding companies, divisions, affiliated companies and corporations (or other organizations), and each of its and their respective past, present and future directors, officers, managers, employees, general partners, limited partners, members, principals, agents, employees, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, transferees, administrators, executors, assigns and legal representatives of all claims relating in any way to electricity charges made, assessed or imposed by or on behalf of the Released Parties during the Class Period, including but not limited to any claims made in the Litigation or that relate to or arise out of any claim or allegation made in the Litigation or which could have been made in the Litigation.

### 4. **The Notice Program**

The Settlement Administrator is AB Data.  (Docket No. 298, Ex. 1 at 10.)  All fees, costs, and expenses of the Settlement Administrator incurred in connection with the Notice Program and settlement administration will be paid from the Settlement Fund.  (*Id.* at § 8.)  The Notice Program (*id.* at § 3) is designed to provide the best notice practicable and is tailored to take advantage of the information CBL has about Settlement Class Members.  It has already been successfully executed once when notice was provided to the Nationwide Class prior to trial.  The Notice Program provides notice in substantially the same manner as notice was provided previously during the litigation.  The Notice Program is reasonably calculated under the circumstances to apprise the Settlement Class about the terms of the Settlement, Class Counsel's fee application and request for an incentive award for Plaintiff,

and their rights to opt out of the Settlement Class or object to the Settlement.  The Notice and Notice Program constitute sufficient notice to all persons entitled to notice and satisfy all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of due process.

The Notice Program provides notice in two different ways: (1) postcard notice ("Mailed Notice") to Settlement Class Members (Docket No. 298, Ex. 3); and (2) a "Long Form" notice with more detail ("Long Form Notice," (*id.* Ex. 2), that will be available on the Settlement website ([www.CBLELECTRICITY_LAWSUIT.com](http://www.CBLELECTRICITY_LAWSUIT.com)).   (*Id.*, Ex. 1 at § 3.2.2.)

The Notice Program provides the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from or opt out of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; how Former Tenants can submit a Claim; the date of the Final Approval Hearing; and the internet address of the Settlement Website at which Settlement Class Members may access the Agreement and other related documents and information, and how to submit a Claim.  (*Id.*, Ex. 1 at § 3.)

### (a)   The Mailed Notice Program

The Settlement Administrator will provide postcard notice to all Settlement Class Members.  The Settlement Administrator will use the mailing address provided in the Notice List and will cross-reference this information with the United States Postal Service's change of address database to confirm its accuracy.   The Settlement

Administrator shall also re-mail the Short Form Class Notice once for any returned addresses.

**(b)      The Settlement Website**

At the time the Class was certified, the Settlement Administrator created a case-specific website (www.CBLELECTRICITYLAWSUIT.com) that contained information about the lawsuit.  The Settlement Administrator will use that website for Settlement Class Members to obtain notice of, and information about, the Settlement.  The Settlement Website will include hyperlinks to the Settlement, the Long-Form Notice substantially in the form attached as Exhibit 2 to the Motion, the Preliminary Approval Order, and such other relevant documents.  These documents will remain on the Settlement Website at least until the Final Approval Hearing.

**5.      Settlement Administration**

As noted above, AB Data is the Settlement Administrator and all fees and charges for the administration of the Settlement will be paid from the Settlement Fund. The Settlement Administrator's responsibilities include:

a.      Sending out postcard notice to the Class Members;

b.      Administering the Notice Program;

c.      Establishing and maintaining an address where requests for exclusion from the Settlement Class may be sent;

d.      Establishing and maintaining the Settlement Website;

e.      Processing all requests for exclusion from the Settlement Class;

f.    Providing reports that summarize the number of requests for exclusion received, the total number of exclusion requests received to date, and other pertinent information;

g.    Processing claims made by Former Tenants and providing information concerning such claims to Class Counsel and Defendants' Counsel;

h.    In advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that identifies each Settlement Class Member who timely and properly requested exclusion from the Settlement Class;

i.    Processing and transmitting distributions to Settlement Class Members from the Settlement Fund.

## 6.    Class Representative Incentive Award

Class Counsel seeks, and CBL does not oppose, an incentive award of $50,000 for Class Representative Salon Adrian.  (Docket No. 298, Ex. 1 at § 7.)  If approved, the incentive award would be paid from the Settlement Fund and would be in addition to the relief Salon Adrian is entitled to under the terms of the Settlement.  This incentive award would compensate Salon Adrian for its time and effort in the lawsuit, including its time and effort in preparing for and appearing at its deposition, gathering documents responsive to CBL's document requests, answering CBL's interrogatories, preparing to testify at trial, and for the risks it assumed in prosecuting this lawsuit against CBL.

## 7.    Attorney's Fees and Costs

CBL does not object to a fee request by Class Counsel that does not exceed $27,000,000 of the Settlement Fund and will not oppose Class Counsel's request for

reimbursement of documented litigation costs and expenses, not to exceed $1 million. (Docket No. 298, Ex. 1 at § 8.)  Class Counsel agrees not to seek more than $27,000,000 of the Settlement Fund for attorney's fees and not to seek more than $1 million in litigation costs and expenses.  (*Id.*)  The Parties negotiated attorney's fees and costs only after reaching agreement on all other material terms of the Settlement.

## III.   ANALYSIS

### A.   THE LEGAL STANDARD FOR PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court."  *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  In exercising that discretion, this Court is reminded of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

The purpose of preliminary evaluation of proposed class action settlements is to

determine whether the settlement is within the "range of reasonableness."  4 Newberg § 11.26.  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).  Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See Manual for Complex Litigation,* Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

When determining whether a settlement is ultimately fair, adequate and reasonable, courts in this Circuit have looked to six factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved."[3] *Bennett*, 737 F.2d at 986.  Courts have, at times, engaged in a "preliminary evaluation" of these factors to determine whether the settlement falls within the "range of reason" at the preliminary approval stage. *See, e.g.*, *Smith*, 2010 WL 2401149 at *2.[4]

---

[3] In addition to the *Bennett* factors, in December 2018, Fed. R. Civ. P. 23 was amended to include additional factors.  This Order addresses these new factors and the *Bennett* factors.

[4] The Court does not address the factor related to anticipated opposition to the Settlement in the context of its Order, because at this preliminary stage, Notice has not yet been distributed.

**B.** **THIS SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY SETTLEMENT APPROVAL**

The Court finds that each of the relevant factors weighs in favor of Preliminary Approval of this Settlement.  First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel and an experienced mediator.  Furthermore, a preliminary review of the factors related to the fairness, adequacy, and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, and that Preliminary Approval is appropriate.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.  The Class believes the claims asserted are meritorious and that the Class would have prevailed if this matter proceeded to trial.  CBL argues that the Class's claims are unfounded, denies any potential liability, and has shown a willingness to litigate its defenses vigorously.  The parties concluded that the benefits of the Settlement outweigh the risks attendant to continued litigation that include, but are not limited to, the risk of obtaining nothing at trial, the time and expense associated with trial and the time, expense, and uncertainty associated with appellate review irrespective of the outcome at trial.

**1.** **This Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations (Rule 23(e)(2)(B)), and Class Counsel and the Class Representative Adequately Represented the Class (Rule 23(e)(2)(A))**

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lipuma v.*

*American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").   As detailed above, the Settlement here satisfies those criteria and is the result of intensive, arm's-length negotiations before respected mediators between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this lawsuit. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

In negotiating this Settlement, Class Counsel conducted a thorough investigation and analysis of the Class's claims, engaged in extensive, years-long discovery, and ultimately had the benefit of key rulings from the Court.   Thus, Class Counsel was prepared for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two Rule 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).   Class Counsel was also well-positioned to evaluate the strengths and weaknesses of the Class's claims, as well as the appropriate basis on which to settle them, as a result of its extensive work on this case over the past three years, including its work on a successful class certification motion, defending against CBL's motion for summary judgment, and its completion of preparations

for trial.[5]

**2.      The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate, and Reasonable (Rule 23(e)(2)(C))**

For the reasons below, the Court concludes that the Settlement falls within the "range of reason" such that notice should issue and a final hearing as to fairness, adequacy, and reasonableness of the Settlement is warranted.

**(a)      The Likelihood of Success at Trial, the Complexity, Expense, and Duration of Litigation (*Bennett* Factors), and the Costs, Risks, and Delay of Trial and Appeal (Rule 23(e)(2)(C)(i))**

Although the Class is confident in the strength of its case, CBL has put forth meritorious defenses, and there are risks inherent in trying this lawsuit.  As noted above, the Court entered key rulings on the eve of trial, including its decision to allow one of CBL's experts, who had previously been excluded, to testify at trial.  Furthermore, the success of the Class's claims at trial and on appellate review turned on, among other things, whether equitable tolling applied allowing the Class to obtain damages beyond the one-year limitation in CBL's leases.  Based on these issues, Class Counsel determined that the Settlement outweighs the potential benefits from continued litigation of this lawsuit, given these risks.  Had the Court found in favor of CBL on equitable tolling, the Class's damages would have been significantly less than the Settlement Fund.  Furthermore, even if the Class did prevail at trial, any recovery would be delayed for years by an appeal.  *Lipuma*,

---

[5] The Class Representative, Salon Adrian, also adequately represented the interests of the Class. Salon Adrian spent considerable time working with attorneys to gather documents responsive to CBL's document requests, reviewing all substantive pleadings prior to filing, sitting for deposition, attending mediation, and preparing for trial.

406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).  This Settlement provides relief to Settlement Class Members without any further delay.

Furthermore, the traditional means for individually handling claims like those at issue here would tax an already overburdened Court, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Class Members, would be impracticable.  Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.  The costs and expenses associated with a trial would have been substantial, including the costs and fees associated with the Class' experts and the presentation of evidence.  The Court finds that these considerations militate heavily in favor of the Settlement.  *See Behrens*, 118 F.R.D. at 542.

> **(b)** **The Effectiveness of any Proposed Method of Distributing Relief to the Class, including the Method of Processing Class Member Claims (Rule 23(e)(2)(C)(ii)) and the Proposal Treats Class Members Equitably Relative to Each Other (Rule 23 (e)(2)(D))**

Courts have concluded that where the settlement terms apply equally to all Class members the "method of distributing relief to the class" will effectively benefit every member of the Class and treat them equitably relative to each other.  *Gumm v. Ford*, 2019 WL 479506, at \*6 (M.D. Ga. Jan. 17, 2019).  Here, each Settlement Class Member is able to receive 100% of their alleged losses based upon estimated damages.  All Settlement Class Members who are Current Tenants will automatically receive their Settlement Award in the form of rent credits.  Settlement Class Members who are Former Tenants may file a

simple claim form submitted through the United States Postal Service and will receive a lump sum cash payment of their Settlement Award.   Accordingly, all Settlement Class Members are treated substantially equally and the Court finds this factor weighs in favor of a finding that the Agreement is fair to, and adequate for, all Settlement Class Members.

**(c)      The Terms of any Proposed Award of Attorney's Fees, Including Timing of Payment (Rule 23(e)(2)(C)(iii))**

Rule 23 requires a district court to assess "the terms of any proposed award of attorney's fees, including timing or payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  There are no "rigid limits" on attorney's fees but "the relief actually delivered to the Class can be a significant factor in determining the appropriate fee award."  Fed. R. Civ. P. 23 Advisory Comm.'s Note, 2018 amend.  "Attorneys' Fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the Class." *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991).  "There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case."  *Id.*  Therefore, the district court has wide discretion to award attorneys' fees based on its own expertise and judgment because of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters."  *Waters v. Cook's Pest Control, Inc.* 2012 WL 2923542, at *15 (N.D. Ala. July 17, 2012) (internal quotations omitted).  Nevertheless, "[t]o avoid depleting the funds available for distribution to the class, an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded."  *Id.* (internal

quotations omitted).

Here, Class Counsel will request $27,000,000, 30% of the Settlement Fund, for attorney's fees, an amount to which CBL does not object. The Parties negotiated attorney's fees only after reaching agreement on all other material terms of the Settlement. The payment of those fees is contingent on final approval of the Settlement. The Settlement Agreement in this case provides substantial relief to the Class Members, and Class Counsel is entitled to attorney's fees under RICO and applicable case law. *Camden I*, 946 F.2d at 774. Furthermore, considering the effort spent by Class Counsel in litigating this lawsuit for more than three years, an award of 30% of the common fund is below other attorney's fees awards in this jurisdiction. *See Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) (awarding 33% attorney's fees); *In re Managed Care Litig. V. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding 35.5% attorney's fees); *Cook's Pest Control*, 2012 WL 1355573, at 18 (awarding 35% attorney's fees). Accordingly, the Court finds that Class Counsel's request for attorney's feesweighs in favor of a finding that the Settlement Agreement is fair to, and adequate for, the Settlement Class Members.

Furthermore, while $22,000,000 of Class Counsel's proposed attorney's fee award would be paid 15 business days after the Final Approval Order becomes final and all times to appeal or otherwise seek review or reconsideration of the Final Approval Order have expired, the remaining $5,000,000 of Class Counsel's proposed attorney's fee award is not due and payable by CBL until July 1, 2020. The Court finds that the timing of Class Counsel's fee request also militates in favor of a finding that the Settlement Agreement is

fair to and adequate for the Settlement Class Members.

**(d)**     **Agreements Made in Connection with the Proposed Settlement (Rule 23(e)(2)(C)(iv))**

Rule 23 requires the parties to file with the Court "a statement identifying any agreement made in connection with" a proposed settlement. Fed. R. Civ. P. 23(e)(3). Here, the only agreement made in connection with the Settlement Agreement is a side letter between Class Counsel and Defendants' Counsel identifying the number of opt-outs that would allow Defendants to invalidate the Settlement Agreement under Section 9.4. The side letter does not impact the fairness of the Settlement Agreement because it does not contain any relevant information for the Settlement Class and therefore the Court finds that this factor weighs in favor of a finding that the Settlement Agreement is fair and adequate.

**(e)**     **Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair (*Bennett* Factors)**

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.* Courts have determined that settlements may be reasonable even where the Class recovers only part of their actual losses. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery

quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $90 million Settlement Fund in this case is an outstanding result, given the complexity of the litigation and the significant risks and barriers that would have continued to loom in the absence of Settlement. Based on estimated damages, the Settlement Fund represents 100% of the Settlement Class Members' damages. In addition, Class Counsel obtained practice changes that represent millions of dollars in additional benefits to Class Members. Accordingly, there can be no doubt that this Settlement is a fair and reasonable recovery for the Settlement Class in light of the Court's rulings on the eve of trial, CBL's defenses, the numerous appellate issues in this lawsuit, and the challenging and unpredictable path of litigation the Class faced absent a settlement.

### (f)  The Stage of the Proceedings (*Bennett* Factor)

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. The Settlement was reached just three weeks before trial, after extensive pretrial discovery outlined above, and after the Court certified a class and denied CBL's motion for summary judgment and *Daubert* motions. As a result, the Court finds that Class Counsel was well-positioned to evaluate the strengths and weaknesses of the Class' claims and prospects for success at trial and on appeal.

### C.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The Court certifies the following Settlement Class:

> All tenants at shopping malls managed by CBL & Associates Management, Inc., whose electricity charges were determined based on a Valquest survey from January 1, 2011 through April 24, 2019.
>
> Excluded are governmental agencies or entities and any tenant who excluded themselves, by location, following the March 2019 Class Notice.

(Docket No. 298, Ex. 1 at 10.)

Having previously determined that class certification was warranted, the Court need not revisit the elements of class certification here. Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class Members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt out, and of the date, time, and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. For purposes of this Settlement, CBL does not oppose class certification. For the reasons set forth below and as the Court previously found in its Order granting class certification, certification is appropriate under Rule 23(a) and (b)(3). (*See* Docket No. 242.)

## D. <u>THE COURT APPROVES THE PROPOSED NOTICE PROGRAM</u>

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Compl. Lit. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314

(1950).  To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit., § 21.312 (listing relevant information).

The Notice Program satisfies all of these criteria.  As recited in the Settlement and above, the Notice Program informs Settlement Class Members of the substantive terms of the Settlement.  It advises Settlement Class Members of their options for opting out of, or objecting to, the Settlement, how Settlement Class Members who are Former Tenants may submit claims, and how to obtain additional information about the Settlement.  The Notice Program is designed to reach a high percentage of Settlement Class Members and it exceeds the requirements of Constitutional due process.  Therefore, the Court approves the Notice Program and the form and content of the Notices attached the Class' Motion at Exhibits 2-3. (Docket No. 298 at Exs. 2-3.)

### E.     **FINAL APPROVAL HEARING**

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear evidence and argument necessary to make its final evaluation of the Settlement.  Proponents of the Settlement may explain the terms and conditions of the Settlement and offer argument in support of Final Approval.  The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a Final Approval Order under Rule 23(e); and whether to approve Class Counsel's

application for attorney's fees and reimbursement of costs and expenses.

### F.   EXCLUSION AND OBJECTION REQUIREMENTS

The Court has reviewed the procedures for objecting or for requesting exclusion from the Class which are set forth in the Settlement Agreement. The Court finds these procedures appropriate and reasonable. To object to the Settlement, Class Members must follow the directions in the Long Form Notice and file a written Objection with the Court by the Objection Deadline.  Failure to follow the procedures set forth in the Long Form Notice will result in the Court striking such objections.  Class Members may not both object and opt out.  If a Class Member submits both a Request for Exclusion and an objection, the Request for Exclusion will be controlling.

### G.   STATUS PROVISIONS

Pending final Settlement approval, all pre-trial proceedings and briefing schedules in the Action are stayed.  If the Settlement is not approved or consummated for any reason whatsoever, the Settlement and all proceedings in connection with the Settlement will be without prejudice to the right of Defendant or the Class Representative to assert any right or position that could have been asserted if the Agreement had never been reached or proposed to the Court.  In such an event, the Parties will return to the *status quo ante* in the Action and the certification of this Settlement Class only will be deemed vacated.  The certification of the Settlement Class for settlement purposes, or any briefing or materials submitted seeking certification of the Settlement Class, will not be considered in connection with any subsequent decisions in such event.

The Agreement, and any and all negotiations, documents, and discussions

associated with it, will not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation, or principle of common law or equity, or of any liability or wrongdoing, by defendants, or the truth of any of the claims, and evidence relating to the Agreement will not be discoverable or used, directly or indirectly, in any way, whether in the Action or in any other action or proceeding, except for purposes of demonstrating, describing, implementing, or enforcing the terms and conditions of the Agreement, this Order, and any Final Judgment and Order of Dismissal.

Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Agreement, including making, without further approval of the Court, minor changes to the form or content of the Notice and Claim Form, and other exhibits that they jointly agree are reasonable and necessary.  The Court may require that it approve the Notice and Claim Form with such modifications, if any, as may be agreed to by the Parties without further notice to the members of the Class.

For ease of reference, the following are the dates by which certain events must occur:

| ACTION | DATE |
|---|---|
| Settlement Notice Date | No more than 21 days after Preliminary Approval Order entered |
| Class Counsel's Fee/Service Award Motion Due | No later than 14 days prior to Final Approval Hearing |
| Opt-Out and Objection Deadline | 30 days after Notice Date |
| Deadline to Submit Claims | 30 days after Final Approval Hearing Date |
| Motion for Final Approval, Claims Administrator Declaration, and Response to Objections Due | 14 days prior to Final Approval Hearing |

## IV.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that**:

(1) The Motion (Docket No. 298) is **GRANTED**, and the Settlement is preliminarily **APPROVED**;

(2) The following Settlement Class is **CERTIFIED** for settlement purposes pursuant to Rule 23(b)(3):

All tenants at shopping malls managed by CBL & Associates Management, Inc., whose electricity charges were determined based on a Valquest survey from January 1, 2011 through April 24, 2019.

Excluded are governmental agencies or entities and any tenant who excluded themselves, by location, following the March 2019 Class Notice;

(3) The Notice Program set forth in the Settlement and as described above and the form and content of the notices attached to the Settlement Agreement and to the Class's Motion for Preliminary Approval of Class Settlement as Exhibits 2-3 are **APPROVED**;

(4) The opt-out and objection procedures set forth in the Settlement and set forth above are **APPROVED**;

(5) Wave Lengths Hair Salons of Florida, Inc., d/b/a Salon Adrian is **APPOINTED** as Class Representative;

(6) David M. Buckner, Seth E. Miles, and Brett E. von Borke of the law firm of Buckner + Miles, Steve W. Berman and Thomas E. Loeser of the law firm of Hagens Berman Sobol Shapiro LLP, and Ben Yormak of Yormak Employment and Disability Law, are **APPOINTED** Settlement Class Counsel;

(7) AB Data is **APPOINTED** as Claims Administrator, with the duties set forth in the Settlement Agreement and this Order;

(8) The Court will hold a final approval hearing on Tuesday, August 20, 2019, at 10:30 am, in Courtroom 7D, Warren E. Burger Federal Building and U.S. Courthouse, St. Paul, Minnesota, unless circumstances require that the hearing be held in the U.S. Courthouse, Ft. Myers, Florida.

Dated:   April 24, 2019

_s/ Paul A. Magnuson_
Paul A. Magnuson
United States District Court Judge