UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Wave Lengths Hair Salons of
Florida, Inc., on behalf of itself
and all others similarly situated, d/b/a
Salon Adrian,

Case No. 2:16-cv-206-FtM-PAM-MRM

Plaintiff,

v.

**MEMORANDUM AND ORDER**

CBL & Associates Properties, Inc.
CBL & Associates Management, Inc.,
CBL  &  Associates  Limited
Partnership, and JC Gulf Coast Town
Center, LLC,

Defendants.

_____

This matter is before the Court on the Plaintiff Class's Unopposed Motion for Final

Approval of Class Settlement, and Unopposed Motion for Attorney's Fees, Expenses, and

Incentive Award.  (Docket Nos. 309, 310.)  The Court previously preliminarily approved

the Settlement Agreement, certified a settlement class, and approved notice to the class

(Docket No. 301.)  That notice resulted in two opt-outs from a class of more than 3,750,

and no objections to the Settlement, or to the requested fees, expenses, or incentive award.

As described in further detail below, the Settlement is an excellent result for the

Settlement Class, and its terms are within the range of reasonableness and consistent with

applicable case law.  Consequently, the Court grants Final Approval, grants the requested

attorney's fees of $27,000,000, payment of class counsel's costs of $1,000,000, and

payment of an incentive award of $50,000 to lead Plaintiff and Class Representative Wave

Lengths Hair Salons of Florida, Inc. ("Salon Adrian").

## I.    INTRODUCTION

This lawsuit alleged that tenants at malls owned or managed by CBL had their electricity charges marked up or their electrical usage inflated through surveys performed by electrical consultant Valquest.  Plaintiff claimed CBL's conduct violated, among others, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), and Florida RICO.  CBL vigorously denied the Plaintiff's claims and defended against the lawsuit.

The Parties have engaged in three years of active litigation.  This included significant motion practice and voluminous formal discovery.  The parties fully briefed motions for class certification and dispositive motions, all of which raised complicated legal and factual questions.

The Parties mediated this case three times before two experienced mediators.  In March 2019, two weeks before trial was set to begin, the Parties reached agreement on the material terms of a Settlement that was approved by CBL's board of directors.

Under the terms of the Settlement, Settlement Class Members who do not opt out will be provided up to 100% of their alleged losses based on certain estimates of damages.  Settlement Class Members who are Current Tenants will automatically receive credits against their rent for the Settlement Amount calculated for them over a five-year period following the Effective Date.  Claim forms are due 30 days after this Final Approval Order is entered.

## II.     STATEMENT OF FACTS

### A.     FACTUAL BACKGROUND

#### 1.     Procedural History

Plaintiff brought this lawsuit seeking monetary damages based on its claim that CBL marked up the electric rate it charged its tenants and intentionally inflated the number of kilowatt-hours it billed them.  The Plaintiff alleged that as a result of CBL's deception, the Class paid tens of millions of dollars in overpayments for electricity to CBL.

CBL vigorously denied the Class' allegations of wrongdoing.  CBL consistently defended its conduct by, inter alia, arguing that the Class' leases permitted CBL to charge a higher electric rate than it paid and permitted it to charge based off an estimate, that the electric rates billed the tenants followed the local utility rates they would be charged as a standalone entity, that tenants obtained the full benefit of their bargain under the terms of the leases, and that CBL complied with all applicable laws.  CBL also advanced a variety of affirmative defenses.

On September 6, 2016, CBL moved to dismiss the Class Complaint and moved to strike the nationwide class allegations contained in the Complaint.  (Docket No. 46.)  On April 11, 2017, the Court denied, in part, CBL's Motion to Dismiss.  (Docket No. 80.)  After the Court entered the Stipulated Confidentiality Agreement and Protective Order ("ESI Order") on November 2, 2017, the Parties engaged in significant and substantial discovery.

During the course of discovery, CBL produced more than 1.8 million pages of documents.  In addition, more than 70 third parties were served with subpoenas resulting

3

in more than 200,000 pages of additional documents produced. Class Counsel created a large document review team responsible for reviewing and analyzing the documents. To make the review and subsequent litigation more efficient, Class Counsel established coding procedures for electronic review of the documents, and team members remained in constant contact with each other to ensure that all Plaintiff's counsel became aware of significant emerging evidence in real time. During the litigation, Class Counsel deposed 12 party and non-party witnesses, and CBL deposed the Class Representative and the Class's experts.

On January 7, 2019, this Court granted, in part, the Motion to Certify the Class. (Docket No. 242.) Shortly thereafter, this Court approved a class notice program. (Docket No. 280.) Class Counsel provided notice to more than 4,800 potential Class members through postcard notice. The Court on January 23, 2019, denied CBL's Motion for Summary Judgment. (Docket No. 251.) The Parties attended the Court's January 9, 2019, pretrial conference and calendar call, and trial was scheduled to begin on April 2, 2019.

### 2.   Settlement Negotiations

The Parties mediated on July 26, 2017, with David Geronemus in New York City. The Parties were unable to resolve the dispute at that mediation. On September 9, 2018, Class Counsel and CBL mediated with Rodney A. Max of Upchurch, Watson, White & Max, a Court-approved mediators. The Parties were once again unable to reach a settlement during that mediation. The Parties continued their settlement discussions and mediated again with Mr. Max on March 14, 2019. Following 18 hours of negotiations, on March 15, 2019, the Parties executed a Settlement Term Sheet memorializing the material terms of the Settlement, which was subsequently incorporated into the Settlement

Agreement and Release filed by the Parties.

### B.   SUMMARY OF THE SETTLEMENT TERMS

The Settlement's terms are detailed in the Settlement Agreement.  (Docket No. 298-1.)  The following is a summary of the material terms of the Settlement.

#### 1.   The Settlement Class

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The Settlement Class is defined as all tenants at shopping malls managed by CBL & Associates Management, Inc., whose electricity charges were determined based on a Valquest survey from January 1, 2011 through the April 23, 2019. Excluded from the Class are governmental agencies or entities and any tenant who excluded themselves, by location, following the March 2019 Class Notice.  (Ex. 1 at 10).

This is materially the same class that this Court previously certified.[1]

#### 2.   Monetary Relief for the Benefit of the Class

The Settlement creates a common fund of $90 million ("Settlement Fund") for the Settlement Class.  The Settlement Fund will be used to pay Settlement Class Members' damages in individual Settlement Awards (both the Current Tenant rent credits and the Former Tenant cash payments), the Class's costs and attorney's fees, the costs of notice and claims administration, and an incentive award to Plaintiff.  Class Members will be eligible to receive up to 100% of their damages based on estimates of damages of $60,000,000.  In the event that there are any funds left after: (1) payment of Current Tenant

---

[1] The previous Class definition was: "All tenants at shopping malls managed by CBL & Associates Management, Inc., whose electricity charges were determined based on a Valquest survey within the applicable limitations period."  (Docket No. 242 at 18.)

rent credits; (2) payment of all Former Tenant claims; (3) payment of all attorneys' fees and costs, those funds will revert to CBL. Settlement Class Members who are Former Tenants will have up to 30 days after the Court's Final Approval Hearing to submit their claims to the Settlement Administrator. As noted, of the more than 3,750 Settlement Class Members, none objected and only two opted out. (Docket No. 310-1 at ¶¶ 3, 7-8.)

Settlement Class Members who are Current Tenants will not have to submit a claim form of any kind to receive their benefits under the Settlement. Current Tenants will automatically receive a rent credit not less than quarterly for five years totaling their Settlement Award. If Current Tenants allow their lease to naturally expire, any remaining credits due will be paid in cash not less than annually over the remainder of the five-year period. Former Tenants need provide only basic information when submitting a claim and will be able to submit claims through the United States mail. Specifically, Settlement Class Members who are Former Tenants will only be required to provide their name and any DBA, mailing address for payment of the settlement proceeds, the address of the mall where it rented space, the dates of rental, and any unique identifier used by the Tenant to identify its store location (and those who have been in bankruptcy or request payment to a different individual or entity will have to provide some modest additional information). The Claims Administrator may compare the claims submitted by the Settlement Class Members with CBL's records to ensure accuracy.

Thus, all Settlement Class Members will be eligible to receive a distribution from the Settlement Fund. The calculation used to determine the Settlement Class Members' Settlement Award is described in detail in the Agreement. (Docket No. 298, Ex. 1 at § 2.2.)

### 3. Releases

In exchange for the benefits the Settlement confers, all Settlement Class Members who do not opt out will release the Defendants, and all of their past, present, and future parents, subsidiaries, sister corporations, holding companies, divisions, affiliated companies and corporations (or other organizations), and each of its and their respective past, present and future directors, officers, managers, employees, general partners, limited partners, members, principals, agents, employees, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, transferees, administrators, executors, assigns and legal representatives of all claims relating in any way to electricity charges made, assessed or imposed by or on behalf of the Released Parties during the Class Period, including but not limited to any claims made in the Litigation or that relate to or arise out of any claim or allegation made in the Litigation or which could have been made in the Litigation.

### 4. Settlement Class Notice

Pursuant to the Preliminary Approval Order (Docket No. 301), AB Data (the "Settlement Administrator") implemented the Notice Program, using CBL's records. (Docket No. 310-1 at ¶ 3). First, on May 15, 2019, the Settlement Administrator sent postcard notice through first class U.S. Mail to 3,795 Settlement Class Members. (Id. at ¶ 3). The postcard notice contained the Court-approved information about the Settlement, including in particular the website at which Settlement Class Members could obtain additional, detailed information about the Settlement and could access the Court filings and other documents related to the Settlement. (Id. at ¶ 4). The Long Form notice – with more

detail than the postcard notice – has been available on the following website since May 15, 2019: www.cblelectricitylawsuit.com  (Id. at ¶ 6).

### 5.    Opt-Outs And Objections

Settlement Class Members were given thirty days from the date notice was mailed out on May 15, 2019, to either opt out or object to the Settlement.  The opt out and objection procedures were included on the webpage www.cblelectricitylawsuit.com.  None of the Settlement Class Members objected to the Settlement and only two opted out.  (Docket No. 310-1 at ¶¶ 7-8).

### 6.    Class Representative Incentive Award

Class Counsel seeks, and CBL does not oppose, an incentive award of $50,000 for Class Representative Salon Adrian.  (Docket No. 298-1 at § 7).  The incentive award will be paid from the Settlement Fund and will be in addition to the relief Salon Adrian is entitled to under the terms of the Settlement.  This award compensates Salon Adrian for its time and effort in the lawsuit, including its time and effort in preparing for and appearing at its deposition, gathering documents responsive to CBL's voluminous document requests, answering CBL's interrogatories, preparing to testify at trial, and for the risks it assumed in prosecuting this lawsuit against CBL.

### 7.    Attorneys' Fees and Costs

Class Counsel filed its Motion for Attorneys' Fees on June 3, 2019, requesting 30% of the Settlement Fund or $27,000,000.  (Docket No. 309).  CBL does not object to this fee request nor does CBL object to Class Counsel's request for reimbursement of $1,000,000 in documented litigation expenses.  (Docket No. 298-1 at § 8).  Furthermore, none of the

Settlement Class Members object to the payment of Class Counsel's requested attorneys' fees and documented litigation costs.  The Parties negotiated attorneys' fees and costs only after reaching agreement on all other material terms of the Settlement.

## III.   ANALYSIS

### A.   THE LEGAL STANDARD FOR FINAL APPROVAL

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court."  In re U.S. Oil and Gas Litig., 967 F.2d 489, 493 (11th Cir. 1992).  In exercising that discretion, this Court is reminded of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  See, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co., 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977)); see also 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

"A class action settlement [] should be approved so long as it is fair, adequate and reasonable and is not the product of collusion between the parties."  Access Now, Inc. v. Claire's Stores, Inc., 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002) (internal quotation

omitted).   When determining whether a settlement is ultimately fair, adequate, and reasonable, courts in this circuit have looked to six factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition to the settlement.   In re Checking Account Overdraft Litig., 830 F.Supp.2d 1330, 1345 (S.D. Fla. 2011) (citing Leverso v. South Trust Bank of Al., Nat. Assoc., 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); Bennett, 737 F.2d at 986).

"In evaluating these considerations, the Court must not try the case on the merits." Access Now, Inc., 2002 WL 1162422, at *4 (citing Cotton, 559 F.2d at 1330).   "Rather, the Court must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" Id. (quoting Cotton, 559 F.2d at 1330).   Also, "[i]n evaluating a settlement's fairness, 'it should not be forgotten that compromise is the essence of a settlement.   The trial court should not make a proponent of a proposed settlement 'justify each term of the settlement against a hypothetical or speculative measure of what concessions might [be] gained.'" Amoco, 211 F.R.D. at 467 (quoting Cotton, 559 F.2d at 1330).   "Above all, the court must be mindful that inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." Id. (internal quotation omitted).   The Court finds that the Settlement fully meets these standards for

final approval.[2]

> **1.**   **The Settlement Is Free From Fraud And Collusion (<u>Bennett</u> Factor), Is The Product of Good Faith, Informed And Arm's Length Negotiations (Rule 23(e)(2)(B), And The Class Representative Adequately Represented The Class' Interests (Rule 23(e)(2)(A).**

"Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." <u>Braynen v. Nationstar Mortgage</u>, 2015 WL 6872519, at *10 (S.D. Fla. Nov. 9, 2015) (internal quotation omitted).  Moreover, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." <u>Adams v. Inter-Con Sec. Sys., Inc.</u>, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007); <u>see also</u> <u>In re Indep. Energy Holdings PLC</u>, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("[T]he fact that the settlement was reached after exhaustive arm's length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

The Settlement resulted from intense arms-length negotiations following three years of contentious litigation.  There are no indications that the Settlement involved any fraud or collusion, and the Court so finds there was none.  Furthermore, discovery involved multiple motions, 12 depositions, and the review of more than two million pages of documents.  Throughout the litigation, the Parties were in diametric opposition on the feasibility of each cause of action, the relevance of specific documents and testimony, the

---

[2]   In addition to the *Bennett* factors, in December 2018, Fed. R. Civ. P. 23 was amended to include new factors that courts may consider in the final approval process.  This Order addresses those factors below and the Court finds that all of those factors weigh in favor of granting final approval of the Settlement.

admissibility of expert testimony, and the appropriate measure of damages.  And, the case only settled on the eve of trial after the 11th Circuit denied CBL's Rule 23(f) Petition and the Court issued key rulings concerning the trial.  This record of salient adversity confirms that the Parties negotiated the Settlement at arms-length and negates any finding of fraud or collusion.

Furthermore, in negotiating this Settlement, Class Counsel conducted a thorough investigation and analysis of the Class' claims, engaged in extensive, years-long discovery with CBL, and ultimately had the benefit of key rulings from the Court.  Class Counsel's review of that extensive discovery and the Court's rulings, prepared Class Counsel for well-informed settlement negotiations.  See Francisco v. Numismatic Guaranty Corp. of America, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two Rule 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).  Class Counsel was also well positioned to evaluate the strengths and weaknesses of the Class' claims, as well as the appropriate basis upon which to settle them, as a result of its extensive work on this case over the past three years, including its work on a successful class certification motion, defending against CBL's motion for summary judgment, and its completion of preparations for trial. The Class Representative, Salon Adrian, also adequately represented the interests of the Class.  Salon Adrian spent considerable time working with attorneys to gather documents responsive to CBL's document requests, reviewing all substantive pleadings prior to filing, sitting for deposition, attending mediation, and preparing for trial.

Accordingly, the Court finds that these factors weigh in favor of granting final approval of the Settlement.

> **2.    The Complexity, Expense, And Likely Duration Of The Litigation (Bennett Factor) And The Costs, Risks, Delay Of Trial And Appeal Support Final Approval Of The Settlement (Rule 23(e)(2)(C)(i).**

Courts have found these factors weigh in favor of settlement approval where the litigation, including appellate process, involves numerous class members and significant time and expense. See e.g., Hall v. Bank of Am., N.A., 2014 WL 7184039, at *4 (S.D. Fla. Dec. 17, 2014) (holding this factor favored settlement approval where "[c]ontinuing to litigate the[] claims would have been time-consuming and expensive" and "even in plaintiffs were to prevail, class certification proceeding, a class trial and the appellate process could go on for years.").

The Settlement here will provide relief for thousands of Settlement Class Members without the need for further litigation and is preferable to the expense and time that a trial and appeal would require.  While the Class is confident in the strength of its case, it is also pragmatic in its awareness of the various defenses available to CBL, and the risks inherent in trying this lawsuit.  The Court entered key rulings on the eve of trial, including its decision to allow one of CBL's experts, who had previously been excluded, to testify at trial.  Furthermore, the success of the Class' claims at trial and on appellate review turned on, among other things, whether equitable tolling applied allowing the Class to obtain damages beyond the one-year limitation in CBL's leases.  Based on these issues, Class Counsel determined that the Settlement reached with CBL outweighed the potential

benefits from continued litigation of this lawsuit, given these risks. Had the Court found in favor of CBL on equitable tolling, the Class' damages would have been significantly less than the Settlement Fund. Furthermore, even if the Class did prevail at trial, any recovery would be delayed for years by an appeal. Lipuma v. Am. Express Co., 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides complete relief to Settlement Class Members without any further delay.

Furthermore, the traditional means for individually handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Settlement Class Members, would be impracticable. Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. The costs and expenses associated with a trial would have been enormous, including the costs and fees associated with the Class' experts and the presentation of evidence. The Court therefore finds that these considerations militate heavily in favor of final approval of the Settlement. See Behrens, 118 F.R.D. at 542.

### 3. The Stage Of The Proceedings And The Amount Of Discovery Completed Weigh In Favor Of Final Approval Of The Settlement (Bennett Factor).

This factor turns on "the degree of case development that class counsel have accomplished prior to settlement to ensure that counsel had an adequate appreciation of the merits of the case before negotiating." In re Checking Account Overdraft Litig., 830 F.Supp.2d at 1348 (internal quotations omitted). "[S]ignificant discovery, merits briefing,

and class certification motion practice" indicate that class counsel are well-informed of the strengths and weaknesses of the litigation.  Lipuma, 406 F. Supp. 2d at 1324 (stating that courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.").

The Settlement was reached just three weeks before trial was to begin and after extensive pretrial discover, after a litigated class was certified by the Court, and after CBL's motion for summary judgment and Daubert motions were denied. As a result, the Court finds that Class Counsel was extremely well-positioned to evaluate the strengths and weaknesses of the Class' claims and prospects for success at trial and on appeal. Accordingly, this factor favors final approval of the Settlement.

### 4.   The Probability Of Success On The Merits Weighs In Favor Of Granting Final Approval Of The Settlement (Bennett Factor).

Under this factor, the Court considers "the likelihood and extent of any recovery from the defendants absent . . . settlement."  In re Checking Account Overdraft Litig., 830 F.Supp.2d at 1349 (internal quotation omitted).  "[T]he Plaintiff's likelihood of success at trial is weighed against the amount and form of relief contained in the settlement." Saccoccio v. JP Morgan Chase Bank, N.A., 297 F.R.D. 683, 692 (S.D. Fla. 2014) (internal quotation omitted).

While Class Counsel was confident about the merits of its case, the Court notes there were substantial hurdles in prosecuting this case through trial and appeal.  The Class' potential for success at trial turned on many factors, including the Court finding: (1)

equitable tolling allowed the Class to recover more than one year of damages; (2) the Class' damages expert correctly calculated damages; (3) the FDUTPA exemption did not apply; and (4) the Class satisfied RICO's proximate cause element. CBL was prepared to offer expert testimony on each of these points.

Even if the Class prevailed at trial, moreover, the prospect of an appeal posed an additional risk to the Class' ultimate success on the merits. In addition to the issues noted above, CBL intended to attack in any appeal the Court's class certification order arguing, among other things, that the variation in utility laws and regulations precluded class certification, the Class was not ascertainable, and the Class' damages model did not fit its theory of liability as required under Comcast. Although the Court ruled in the Class' favor on these various issues, there is a risk the Eleventh Circuit would hold otherwise. Under those circumstances, the Class would have expended significant time and expense only to obtain no recovery.

On the other hand, this Settlement guarantees relief for the Class. As this Court previously found, "the Settlement provides substantial relief to the Settlement Class" without any further delay. (Docket No. 301 at 1). Each Settlement Class Member can recover up to 100% of an estimate of its damages. The prospect of recovering more than a 100% of the Class' damages after an unpredictable trial and appeal does not outweigh those benefits. See, e.g., In re Soderstrom, 477 B.R. 249, 256 (Bankr. M.D. Fla. 2012) ("In this case, under these circumstances, a bird in the hand is worth two in the bush.") Accordingly, the Court finds this factor weighs in favor of final approval.

### 5.   The Range Of Possible Recovery Weighs In Favor Of Final Approval Of The Settlement (<u>Bennett</u> Factor).

"In determining whether a settlement is fair in light of the potential range of recovery, the Court is guided by the important maxim [] that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."   <u>In re Checking Account Overdraft Litig.</u>, 830 F.Supp.2d at 1350 (internal quotations omitted) (approving settlement that provided recovery of 9% to 45% of potential recovery that could have been obtained through trial).   Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."   <u>Behrens</u>, 118 F.R.D. at 542; <u>see also</u> <u>Perez v. Asurion Corp.</u>, 501 F.Supp.2d 1360, 1380-81 (S.D. Fla. 2007) ("The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable.").   It is important to weigh the benefits Settlement Class Members will receive from the settlement against the risks of moving forward and recovering nothing.   <u>Perez</u>, 501 F.Supp.2d at 1381 ("These benefits to Defendants approximately 40 million customers – when viewed against the backdrop of all of the uncertainties, risks, and problems that have surfaced in this litigation . . . and the reasonable possibility that Plaintiffs would not have recovered anything if they had proceeded to trial – weigh heavily in favor of approving this Settlement.").

The Court finds that the Settlement is reasonable.   As the Court previously found, "[t]he $90 million Settlement Fund in this case is an outstanding result . . . there can be no doubt that this Settlement is a fair and reasonable recovery for the Settlement Class in light

of the Court's rulings on the eve of trial, CBL's Defenses, the numerous appellate issues in this lawsuit, and the challenging and unpredictable path of litigation the Class faced absent a settlement." (Docket No. 301 at 21). The Court finds that obtaining 100% of an estimate of the Class' losses without the attendant risk of trial and appeals and the associated delay of both represents an outstanding result for the Class and weighs heavily in favor of approval of the Settlement.

> **6.** **Class Counsel Evaluated The Strengths And Weaknesses Of Their Claims And Support Approval Of This Settlement And There Is No Opposition From The Class (<u>Bennett</u> Factor).**

The endorsement of well informed, experienced class action attorneys is strong support for the final approval of a settlement. <u>Warrant v. City of Tampa</u>, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988). A court should give great weight to the recommendations of counsel for the parties, given their considerable experience in the litigation. <u>Id.</u>; <u>see also</u> <u>In re Domestic Air Trasp.</u>, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (internal quotations omitted); <u>Mashburn v. Nat'l Healthcare, Inc.</u>, 684 F. Supp. 660, 672 (M.D. Ala. 1988) ("If plaintiffs' counsel did not believe that these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement").

The Court finds that Class Counsel is well apprised of the strengths and weaknesses of the Class' claims. Class Counsel reviewed more than two million pages of documents,

read hundreds of cases, took 12 depositions, and briefed dozens of motions regarding the substantive issues in this litigation.  Relying on their encyclopedic knowledge of the strengths and weaknesses of their case, Class Counsel collectively and unequivocally believe this Settlement is in the best interests of the Class.

Furthermore, "in determining whether a proposed settlement is fair, reasonable and adequate, the reaction of the class is an important factor." Lipuma, 406 F.Supp.2d 1324. "Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding the settlement was unreasonable." Lee v. Ocwen Loan Servs., 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) (internal quotations omitted); Gavaerts v. TD Bank, N.A., 2015 WL 6751061, at *8 (S.D. Fla. Nov. 5, 2015) ("[T]he Court also finds it telling that of the 1,122 Settlement Class Members, none objected to, or opted out of, the Settlement."). Here, none of the Settlement Class Members objected to the Settlement and only two opted out. (Docket No. 310-1 at ¶¶ 7-8). The Court finds that the reactions of Settlement Class Members, therefore, confirm that the Settlement is fair, adequate, and reasonable.

7. **The Effectiveness Of Any Proposed Method Of Distributing Relief To The Class, Including The Method Of Processing Class Member Claims (Rule 23(e)(2)(C)(ii)) And The Proposal Treats Class Members Equitably Relative To Each Other (Rule 23 (e)(2)(D)) And Support Final Approval.**

Courts have concluded that where the settlement terms apply equally to all Class members the "method of distributing relief to the class" will effectively benefit every member of the Class and treat them equitably relative to each other. Gumm v. Ford, 2019 WL 479506, at *6 (M.D. Ga. Jan. 17, 2019). Here, each Settlement Class Member is able

19

to receive 100% of an estimate of their damages, which Defendants dispute.  All Settlement

Class Members who are Current Tenants will automatically receive their Settlement Award

in the form of rent credits.  Settlement Class Members that are Former Tenants will be able

to file a simple claim form submitted through the United States Postal Service and will

receive a lump sum cash payment of their Settlement Award.  Accordingly, all Settlement

Class Members are treated substantially equally and the Court finds that these factors weigh

in favor of a finding that the Settlement is fair to and adequate for all Settlement Class

Members.

> **8.  The Terms Of Any Proposed Award Of Attorney's Fees, Including Timing Of Payment (Rule 23(e)(2)(C)(iii)), Favor Granting Final Approval.**

Rule 23 requires a district court to assess "the terms of any proposed award of

attorney's fees, including timing or payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  There are

no "rigid limits" on attorney's fees but "the relief actually delivered to the Class can be a

significant factor in determining the appropriate fee award."  Fed. R. Civ. P. 23 Advisory

Comm.'s Note, 2018 amend.  "[A]ttorneys' Fees awarded from a common fund shall be

based upon a reasonable percentage of the fund established for the benefit of the Class."

Camden I Condo. Ass'n v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991).  "There is no hard

and fast rule mandating a certain percentage of a common fund which may reasonably be

awarded as a fee because the amount of any fee must be determined upon the facts of each

case."  Id.  Therefore, "[t]he district court has wide discretion to award attorneys' fees

based on its own expertise and judgment because of the district court's superior

understanding of the litigation and the desirability of avoiding frequent appellate review of

what essentially are factual matters." Waters v. Cook's Pest Control, Inc., 2012 WL 2923542, at *15 (N.D. Ala. July 17, 2012) (internal quotations omitted). Nevertheless, "[t]o avoid depleting the funds available for distribution to the class, an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." Id.

Here, Class Counsel requested $27,000,000 or 30% of the Settlement Fund for attorneys' fees, an amount to which neither CBL nor any Settlement Class Member objects. The Parties negotiated attorneys' fees only after reaching agreement on all other material terms of the Settlement. The Settlement Agreement in this case provides substantial relief to the Class Members, and Class Counsel is entitled to attorneys' fees under RICO and applicable case law. Camden I, 946 F.2d at 774. Significantly, the members of the Class are entitled to receive 100% of an estimate of their damages even after payment of attorneys' fees and costs here. Furthermore, considering the tremendous effort spent and risk assumed by Class Counsel in litigating this lawsuit for more than 3 years, an award of 30% of the common fund is below other attorneys' fees awards in this jurisdiction. See Morgan v. Public Storage, 301 F.Supp.3d 1237, 1257-58 (S.D. Fla. 2016) (awarding 33% attorneys' fees); In re Managed Care Litig. v. Aetna, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding 35.5% attorneys' fees); Cook's Pest Control, 2012 WL 2923542, at 18 (awarding 35% attorneys' fees). Accordingly, the Court finds that Class Counsel's request for attorneys' fees weighs in favor of a finding that the Settlement Agreement is fair to, and adequate for, the Settlement Class Members.

Furthermore, while $22,000,000 of Class Counsel's proposed attorneys' fee award would be paid 15 business days after the Final Approval Order becomes final and all times to appeal or otherwise seek review or reconsideration of the Final Approval Order have expired, the remaining $5,000,000 of Class Counsel's proposed attorneys' fee award is not due and payable by CBL until July 1, 2020.  The Court finds that the timing of Class Counsel's fee request also militates in favor of a finding that the Settlement Agreement is fair to and adequate for the Settlement Class Members, because it invests Class Counsel in the continued oversight of the claims process.  Accordingly, the Court finds this factor weighs in favor of final approval of the Settlement.

### 9. Agreements Made In Connection With The Proposed Settlement (Rule 23(e)(2)(C)(iv)).

Rule 23 requires the parties to file with the Court "a statement identifying any agreement made in connection with" a proposed settlement. Fed. R. Civ. P. 23(e)(3).  Here, the only agreement made in connection with the Settlement Agreement is a side letter between Class Counsel and CBL's counsel identifying the number of opt-outs that would allow Defendants to invalidate the Settlement Agreement under Section 9.4.  With only two Settlement Class Members opting out, that provision of the Settlement Agreement was not triggered.  (Docket No. 310-1 at ¶7).  The side letter does not impact the fairness of the Settlement Agreement because it does not contain any relevant information for the Settlement Class and therefore this factor weighs in favor of a finding that the Settlement Agreement is fair and adequate.

## B.     THE COURT APPROVES CLASS COUNSEL'S FEE REQUEST.

### 1.     Class Counsel Is Entitled To Be Compensated For Creating A Common Benefit For The Class.

Attorneys who create a common fund or benefit for a group of persons are entitled to their fees and costs based on the common benefit achieved. Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than . . . his client is entitled to a reasonable attorney's fee from the fund as a whole."). This exception to the general rule that all parties are to bear their own costs "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 297, 349 (N.D. Ga. 1993) (quoting Boeing, 444 U.S. at 478).   "Furthermore, courts have also recognized that in order to encourage 'private attorney general' class actions brought on behalf of persons with small individual losses, a financial incentive is necessary to entice qualified attorneys to devote their time to complex, time-consuming cases for which they may never be paid." Id. Appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. See, e.g., Mashburn v. Nat'l Healthcare, Inc., 684 F. Supp. 679, 687 (M.D. Ala. 1988). Adequate compensation promotes the availability of counsel for aggrieved persons:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear . . . We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law. It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action

23

suit. It is an experience in which few of us have participated. The dimensions of the undertaking are awesome.

Muehler v. Land O' Lakes, Inc., 617 F. Supp. 1370, 1376 (D. Minn. 1985).

"[A]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." Camden I Condo. Ass'n v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991). In Camden I – the controlling authority in this circuit regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." Camden I, 946 F.2d at 774. Courts in this Circuit have applied the percentage of the fund approach, holding:

> Even before Camden I, courts in this Circuit recognized that 'a percentage of the gross recovery is the only sensible method of awarding fees in common fund cases.' Mashburn v. Nat'l Healthcare, Inc., 684 F. Supp. 660, 670 (M.D. Ala. 1988). More importantly, the Court observed first hand the monumental effort exerted by Class Counsel in this case, and does not need to see timesheets to know how much work Class Counsel have put in to reach this point.

In re Checking Account Overdraft Litig., 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2001).

The Court has substantial discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." In re Sunbeam Sec. Litig., 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (quoting Camden I, 946 F.2d at 774). Therefore, "[t]he district court has wide

discretion to award attorneys' fees based on its own expertise and judgment because of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." Waters v. Cook's Pest Control, Inc., 2:07-CV-00394-LSC, 2012 WL 2923542, at *15 (N.D. Ala. July 17, 2012) (internal quotations omitted). In making the determination, courts are guided by a number of non-exclusive guidelines. In re Checking Account Overdraft Litig., 830 F. Supp. 2d at 1359. Here, the Court finds that Class Counsel's request for fees of 30% of the $90,000,000 Settlement Fund is reasonable and appropriate.

## C.   APPLICATION OF THE CAMDEN I FACTORS SUPPORTS THE REQUESTED ATTORNEYS' FEE.

The Eleventh Circuit in Camden I provided a set of factors the Court should use to determine a reasonable percentage of the fund to award class counsel: (1) the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of the other employment by the attorney as a result of his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the results obtained, including the amount recovered for the clients; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and the length of the professional relationship with the clients; and (12) fee awards in similar cases. Camden I, 946 F.2d at 772 n.3 (citing factors originally set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).

These twelve factors are guidelines and are not exclusive. "Other pertinent factors

are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." Sunbeam, 176 F. Supp. 2d at 1333 (quoting Camden I, 946 F.2d at 775). In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." In re Sunbeam Sec. Litig., 176 F. Supp. 2d at 1333 (internal quotations omitted). Here, the Court finds that all of the Camden I factors support approval of Class Counsel's requested fee.

## 1. The Claims Against CBL Required Substantial Time and Labor (Factor 1).

Class Counsel expended considerable time and effort over the past three years in prosecuting and settling the claims at issue in this lawsuit. Through those efforts, Class Counsel prevented dismissal, obtained class certification, survived summary judgment, excluded one of CBL's expert witnesses, defeated CBL's Rule 23(f) petition to the Eleventh Circuit, and prepared for an imminent trial. In the process, Class Counsel expended more than 14,400 hours of work at a total billable cost of more than $9,000,000. (Docket No. 309-1 at ¶ 5.)

The hours worked by Class Counsel are a reflection of the time and labor required to prosecute and settle Class Members' claims. Counsel first spent years investigating CBL's electricity practices and analyzing legal theories, including interviewing numerous Class Members and other witnesses to gather information about CBL's conduct, both before and after the lawsuit was filed, to determine the effect that CBL's conduct had on

the Class.  This information was essential to Class Counsel's ability to understand the nature of CBL's conduct and potential remedies.  Class Counsel also expended significant resources researching and developing the legal claims at issue.

Once CBL's Motion to Dismiss was denied and discovery opened, Class Counsel served more than 40 sets of document requests and CBL produced more than 1.8 million pages of documents in response to them.  In addition, Class Counsel served more than 70 third-parties with subpoenas resulting in more than 200,000 pages of additional documents produced.  Class Counsel created a large document review team responsible for reviewing and analyzing the documents.  To make the review and subsequent litigation more efficient, Class Counsel established coding procedures for electronic review of the documents, and team members remained in constant contact with each other to ensure that all Class Counsel became aware of significant emerging evidence in real time.  The review and analysis of each of these documents was essential to Class Counsel's ability to understand how the scheme operated.  As noted above, during the litigation, Class Counsel deposed 12 party, non-party, and expert witnesses, and CBL deposed the Class Representative and the Class' experts.   There were numerous discovery motions addressing CBL's privilege log, third-party subpoenas, and discovery requests.

Class Counsel expended significant resources writing numerous briefs throughout this action. In addition to the briefs on class certification, both Defendants and the Class moved for summary judgment.  The Parties also filed numerous pre-trial motions and Daubert motions resulting in the striking of one of Defendants' experts.  The Class also successfully defended against CBL's Rule 23(f) Petition to the Eleventh Circuit.  Finally,

it is noteworthy that this case settled only weeks before the start of trial.  Thus, by the time the Parties agreed on a Settlement, Class Counsel had already spent extensive time and labor on trial preparations and was prepared to try this case.  The time and labor that went into negotiating the Settlement itself was also significant.

Class Counsel worked more than 14,400 hours for which it has not been compensated and will continue to work throughout this process until the Settlement is effectuated.  And, the Court finds that the Class' recovery is a direct result of Class Counsel's substantial efforts and expenditure of resources.  Accordingly, the Court finds that this factor weighs in favor of the requested fee award.

> ### 2. The Issues Involved In This Case Were Novel And Difficult (Factor 2), Making It Viewed As Undesirable (Factor 10), And Requiring The Skill Of Highly Talented Attorneys (Factor 3).

A higher fee award is favored where there are "complex issues requiring experience and skill on the part of Class Counsel." In re Bayou Sorrel Class Action, 2006 WL 3230771, at *4. Difficult issues also often contribute to the undesirability of a case. Id. at *6 (finding undesirability due in part to issues such as "problems of proof, problems of causation, and a host of other complex issues"); see also Cook's Pest Control, Inc., 2012 WL 2923542, at *18 (finding undesirability due to complex discovery issues, along with "the expense and time involved in prosecuting such litigation on a contingent basis, with no guarantee or high likelihood of recovery"). "Counsel should be rewarded for taking on a case from which other law firms shrunk." In re Checking Account Overdraft Litig., 830 F. Supp. 2d at 1364.

This litigation presented complex legal issues regarding RICO, Florida RICO, and

FDUTPA that centered on the Class Members' leases and inflated electric surveys. Specifically, Defendants maintained the Class' FDUTPA claim failed because the FDUTPA exemption applied, arguing their conduct was regulated by Florida's Public Services Commission.  Defendants' also argued that the Class' RICO and Florida RICO claims failed because the Class could prove neither causation nor damages and could not recover more than limited damages because of certain contractual limitations.  The discovery in this case was also complex and required a substantial amount of resources. From serving more than 40 sets of document requests and 70 third party subpoenas to analyzing more than two million pages of documents, Class Counsel was required to spend considerable sums to obtain, manage, and review the documents that served as the foundation of its case.  Class Counsel's out-of-pocket costs in this case total $1,068,292.17. (Docket No. 309-1 at ¶ 16).  These significant expenses were incurred with no guarantee of repayment thereby making the case relatively undesirable to other law firms.  It also bears noting that the case was undesirable from the prospective of class representatives as well. There is and would be significant risks to an ongoing business to file suit against its landlord because of the substantial power differential between a small, family-owned business and a large, national, publicly traded corporation.

The complex legal issues involved impacted the desirability of taking on this lawsuit.  The Court is aware of no other law firm taking the risk to bring this or a similar action and tackle these difficult issues against Defendants.  Each stage of the litigation was hotly contested and required substantial expertise to ensure the Class' claims were effectively prosecuted.   Absent the diligence, care, and expertise of Class Counsel,

Defendants could have prevailed at multiple junctures in this litigation. Indeed, a loss by the Class on causation or damages would have summarily ended the Class' case, but through the efforts of Class Counsel it prevailed.

Furthermore, in evaluating the quality of representation by Class Counsel, the Court also considers the quality of opposing counsel. See Camden I, 946 F.2d at 772, n.3; Ressler v. Jacobson, 149 F.R.D. 651, 654 (M.D. Fla. 1992). Throughout this litigation, CBL was represented by extremely capable counsel from the national law firms of Husch Blackwell, Balch & Bingham, and Campbell Trial Lawyers. These were worthy, highly competent adversaries. Walco Invs. v. Thenen, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"). The Court finds that these factors, therefore, weigh in favor of the requested fees.

### 3. Class Counsel Attained An Excellent Result For Class Members (Factor 8).

The Court finds that the significant monetary relief Class Counsel obtained for Settlement Class Members favors the requested fee award. It is especially significant that Class Counsel achieved a common fund, which is "a substantial, tangible, and real benefit for the Class." See Wolff v. Cash 4 Titles, 03-22778-CIV, 2012 WL 5290155, at *3 (S.D. Fla. Sept. 26, 2012), report and recommendation adopted, 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) ("Unlike cases in which attorneys for a class petitioned for a fee award after obtaining non-monetary relief for the class, such as in the form of 'coupons', Class Counsel here created a wholly cash common fund.").

As the Court previously noted, the $90,000,000 Settlement Fund is an unqualified success. The fund represents 100% of the Class' estimated damages. Moreover, as part of the Settlement Agreement, CBL has agreed to certain practice changes. Specifically, CBL will no longer charge a higher rate for electricity than it pays in Virginia and Florida, representing millions in savings for Class Members. And CBL has agreed to fully disclose its electricity billing practices to its tenants in its lease rental agreements as detailed in the Settlement Agreement. The Court finds that because Class Counsel obtained this significant relief despite substantial financial risks, this factor supports the requested fee award.

### 4.     Class Counsel Assumed Considerable Risk To Bring This Action On A Contingent Basis (Factor 6), Which Precluded Other Employment (Factor 4).

Class Counsel took a significant risk in prosecuting this action entirely on a contingent fee basis. Attorneys' risk is "perhaps the foremost factor" in determining an appropriate fee award. See Goldberger v. Integrated Res., Inc., 209 F.3d 43, 54 (2d Cir. 2000) (internal quotation omitted). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." In re Checking Account Overdraft Litig., 830 F. Supp. 2d at 1364; Ressler, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."). This is particularly true where the law firms prosecuting the case are of the size of some of Class Counsel's firms, particularly where the time devoted to the class action precludes other employment. See In re Bayou Sorrel Class Action, 2006 WL 3230771, at *5 (W.D. La. Oct. 31, 2006) (awarding 36% fee based in part on the reasoning that due to the small size

of class counsel, it lost "the time and opportunity they would have had available to accept other employment.").

Without the "bonus" from a contingency fee arrangement, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks involved in recovering nothing." In re Checking Account Overdraft Litig., 830 F. Supp. 2d at 1365 (quoting Behrens v. Wometco Enterprises, Inc., 118 F.R.D. 534, 548 (S.D. Fla. 1988), aff'd sub nom. Behrens v. Wometco Enterprises, 899 F.2d 21 (11th Cir. 1990)). For instance, in Wolff v. Cash 4 Titles, the court awarded 33.3% of the settlement fund where class counsel's "risk was magnified by the fact that, unlike some class actions, th[e] case was a full, not partial, contingency fee case." 2012 WL 5290155, at *2. The court particularly noted that there was no guarantee of class counsel receiving their hourly rates or reduced hourly rates for their efforts in the litigation and that there was no hybrid contingent fee negotiated guaranteeing counsel even a minimum amount of fees and costs. Id. at *2. Similarly, in Cook's Pest Control, the court found this factor supported the approval of a 35% fee award because class counsel accepted the matter on a contingent basis, incurred significant expense in prosecuting the action, and received no compensation. 2012 WL 2923542, at *17.

Here, Class Counsel incurred substantial risk given the fully contingent nature of the fee, Class Counsel's wholly contingent outlay of over $1 million in costs, and the high risk of failure and nonpayment.  Additionally, Class Counsel have incurred unreimbursed expenses in litigating on behalf of the Class, none of which would have been recovered if the case were not successfully concluded.  From the time Class Counsel filed suit, there

existed a significant possibility that they would achieve no recovery for the Class and, hence, no compensation.  Class Counsel took the risk that Defendants would prevail at the motion to dismiss stage, the class certification stage, or the summary judgment stage.

Furthermore, the hours spent on this case detracted from work on other potential cases. Class Counsel put off other matters, outsourced work, and declined cases they would otherwise have pursued but for their efforts in this case. Although Class Counsel successfully resolved the litigation, this result was not foreseeable at the outset; rather, the contingency risks were substantial, and success was by no means assured.  The Court finds that these factors support the reasonableness of Class Counsel's fee request.

### 5. The Requested Fee Is Lower Than Awards In Similar Cases (Factor 12).

The fee sought here by Class Counsel – 30% of the Common Fund – is at or below the fee typically awarded in similar cases.  Numerous decisions have found that a thirty percent fee is well within the range of a customary fee. See e.g., Sunbeam, 176 F. Supp. 2d at 1333-34. Several recent decisions in this Circuit award attorneys' fees up to or in excess of thirty percent, confirming the fairness and reasonableness of the thirty percent fee requested here by Class Counsel. See e.g., In re Managed Care Litig v. Aetna, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding 35.5%); Cook's Pest Control, Inc., 2012 WL 2923542, at *18 (awarding 35%); Wolff, 2012 WL 5290155, at *7 (awarding 33.3%); In re: Terazosin Hydrochloride Antitrust Litig., No. 99-1317-MDL-Seitz, D.E. 1557 (S.D. Fla. Apr. 19, 2005) (awarding 33.3%); Gutter v. E.I. Dupont De Nemours & Co., No. 95-2152-CIV-Gold, D.E. 626 (S.D. Fla. May 30, 2003) (awarding

33.33%); Tapken v. Brown, No. 90-691-CIV-MARCUS, D.E. 362 (S.D. Fla. Feb. 28, 1995) (awarding 33%); see also Bickel v. Sherriff of Whitley County, 1:08-CV-102-TLS, 2015 WL 1402018, at *6 (N.D. Ind. Mar. 26, 2015) (awarding 43.7%); Chieftain Royalty Co. v. Laredo Petroleum, Inc., CIV-12-1319-D, 2015 WL 2254606, at *2 (W.D. Okla. May 13, 2015) (awarding 40%); Donovan v. Sheriff, 3:11-CV-133-TLS, 2015 WL 7738035, at *5 (N.D. Ind. Dec. 1, 2015) (awarding 40%); In re Bayou Sorrel Class Action, 2006 WL 3230771, at *7 (awarding 36%); In re U.S. Bancorp Litig., 291 F.3d 1035 (8th Cir. 2002) (affirming award of 36%); In re Ampicillin Antitrust Litig., 526 F. Supp. 494, 498 (D.D.C. 1981) (awarding 45%);   Accordingly, the Court finds that this factor supports the reasonableness of Class Counsel's fee request.

**6.    The Requested Fee Is Lower Than The Customary Fee For Similar Services In The Market (Factor 5).**

The Court finds that the requested fee is reasonable when considering what the customary fee would be for similar services in the market.  The Court should consider the market rate when determining fee awards to class counsel. See Wolff, 2012 WL 5290155, at *4. "[C]lass counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome for a paying client." Id. (quoting In re Cont'll Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992). Class Counsel's fee request falls within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. See Continental, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); RJR Nabisco, Inc. Sec. Litig., 818 (MBM), 1992 WL 210138, at *7, Fed. Sec.

L. Rep. (CCH) ¶ 94,268 at 94,268 (S.D.N.Y. Aug. 24, 1992) ("[W]hat should govern [fee] awards . . . what the market pays in similar cases.").

And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." Blum v. Stenson, 465 U.S. 886, 904 (1984) (Brennan, J., concurring); see also Kirchoff v. Flynn, 786 F.2d 320, 323 (7th Cir. 1986) (noting "40 percent is the customary fee in tort litigation"); In re Public Service Co. of New Mexico, 91-0536M, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery."); In re Pearlman, 6:07-BK-00761-KSJ, 2014 WL 1100223, at *3 (Bankr. M.D. Fla. Mar. 20, 2014) ("[T]he Court finds the 35% contingency fee to be reasonable and in line with similar non-bankruptcy rates."); In re Checking Account Overdraft Litig., 830 F. Supp. 2d at 1366 n.35 (noting that contingency fees of up to 40% are customary in the private marketplace).  The Court finds that the record here leaves no doubt that Class Counsel's fee request is appropriate and comports with attorneys' fees awarded in similar cases and earned in the private marketplace.

**7.    The Professional Skill And Standing Of Counsel Support The Requested Fee Award (Factor 9).**

The Court finds that the requested fee is reasonable given Class Counsel's professional skill and expertise, which has served the Class well in this litigation.  The Court should consider the "experience, reputation, and ability of the attorneys" in determining a fee award.  In re Checking Account Overdraft Litig., 830 F. Supp. 2d at

1359; see also Gevaerts v. T.D. Bank, 1:14-CV-20744-RLR, 2015 WL 6751061, at *12 (S.D. Fla. Nov. 5, 2015) ("In the private marketplace, counsel of exceptional skill commands a significant premium. So too should it here.").

Here, Class Counsel are extremely qualified and competent counsel who have experience and expertise prosecuting complex class actions.  Class Counsel have not only successfully tried class actions to jury verdicts and defended those verdicts in the appellate courts but have also obtained billions of dollars in settlements for classes throughout the United States. Defendants' Counsel, moreover, defended against the Class' claims with fervor and adeptness, raised significant legal roadblocks to recovery, and required Class Counsel to maintain the highest quality of representation to reach the point of settlement. The Court finds that this factor weighs in favor of the requested fees.

### 8. The Remaining <u>Camden I</u> Factors Also Favor Approving The Requested Fee.

The Court also finds that the remaining <u>Camden I</u> factors support granting Class Counsel's fee request. As noted above, the burdens of this litigation foreclosed Class Counsel's pursuit of other work; the relatively small size of most of the firms representing the Class, and the major commitment required of all the law firms involved, precluded Class Counsel from working on other cases and accepting other representations. Moreover, without adequate compensation and financial reward, cases such as this simply could not be pursued. As a court in this circuit previously found in <u>In re: Checking Account Overdraft Litigation</u>, in which several of the lawyers in this matter served as counsel for the plaintiffs, "given the positive societal benefits to be gained from lawyers' willingness to undertake

difficult and risky, yet important, work like this, such decisions must be properly incentivized. The Court believes, and holds, that the proper incentive here is a 30% fee." 830 F. Supp. 2d at 1364. This Court agrees.

### 9.     The Claims Presented Serious Risk.

The Settlement here is particularly noteworthy given the combined litigation risk, discussed in the analysis above. CBL mounted a vigorous defense, fought hard in discovery, opposed class certification, and made compelling arguments at summary judgment, all of which it advanced throughout its briefing and at oral argument. CBL also intended to attack class certification at trial, along with mounting a vigorous attack on the Class' damages model. CBL was represented by experienced and talented trial lawyers and therefore the Class had no guarantee of success at trial. And, should the Class have prevailed at trial, CBL intended to appeal that result. The Court finds that success under these circumstances represents a genuine milestone and further supports the reasonableness of the fee request.

### 10.     The Lodestar Cross-Check Supports A Finding That Class Counsel's Fee Request Is Reasonable.

Courts in this Circuit may, although are not required to, use the lodestar method as a cross-check of the percentage of the fund approach. See Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1298 (11th Cir. 1999); Pinto v. Princess Cruise Lines, Ltd., 513 F. Supp. 2d 1334, 1343-4 (S.D. Fla. 2007). "In a pre-Camden I case, the Court performed both methods of analysis and gathered cases on the range of fee awards under either method and noted that lodestar multipliers 'in large and complicated class actions' range from 2.26

to 4.5, while 'three appears to be the average.' In many cases, including cases in this jurisdiction, multiples much higher than three have been approved." Pinto, 513 F. Supp. 2d at 1344 (quoting Behrens, 118 F.R.D. at 549). Class Counsel has more than 14,400 hours that amount more than $9,000,000 in fee time; the requested fee results in a multiplier just under 3, which the Court finds is appropriate and well within the average multiplier, though the result here is significantly above average.

### D.   THE COURT APPROVES REIMBURSEMENT OF CLASS COUNSEL'S LITGATION EXPENSES.

"Upon submission of adequate documentation, plaintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class." Int'l Previous Metals Corp., 190 F.3d at 1298 (internal quotation and citation omitted); Gevaerts, 2015 WL 6751061, at *14 (awarding costs and expenses for, inter alia, "fees for experts, photocopies, travel, online research, translation services, mediator fees, and document review and coding expenses").

Class Counsel seeks reimbursement for a total of $1,000,000 in litigation costs and expenses, even though Class Counsel actually incurred out of pocket expenses of $1,068,292.17, because the Parties in the Settlement Agreement agreed to a cap on Class Counsel's costs. (Docket No. 298-1 at ¶ 16). These sums correspond to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred in connection with the prosecution and settlement of this lawsuit. The Court finds that all of these out-of-pocket expenses were reasonably and necessarily incurred in furtherance of the prosecution of this lawsuit. Neither Defendants nor any Settlement Class Members oppose

reimbursement of these costs and expenses. Accordingly, the Court approves reimbursement of Class Counsel's litigation expenses in the amount of $1,000,000 to be paid from the Common Fund.

### E.   THE COURT APPROVES THE CLASS REPRESENTATIVE'S INCENTIVE AWARD.

"[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." Allapattah Servs., Inc. v. Exxon Corp., 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (quoting Ingram v. Coca-Cola, Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001)); see also Godshall v. Franklin Mint Co., 01-CV-6539, 2004 WL 2745890, at *6 (E.D. Pa. Dec. 1, 2004) (granting special award of $20,000 to each named plaintiff for their work as class representatives); In re Linerboard Antitrust Litig., CIV.A. 98-5055, 2004 WL 1221350, at * 18-19 (E.D. Pa. June 2, 2004) (awarding $25,000 for each of the five class representatives), amended on other grounds, CIV.A.98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004).

The Court approves the unopposed $50,000 incentive award to compensate the Class Representative Salon Adrian for the significant risks and efforts it undertook on behalf of the Class, of which the $90 million Settlement Fund is a direct result. Few business tenants are willing to take on a powerful mall operator like CBL. The risk of being unable to rent at other CBL shopping centers, or at other malls, cannot be overstated. Salon Adrian willingly assumed that risk. Additionally, Salon Adrian undertook additional substantial risk in acting as the Class Representative because CBL could have pursued cost-

shifting remedies under FDUTPA and RICO had a settlement not been reached or Salon Adrian not prevailed at trial or in the appellate courts. See Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 267-68 (N.D. Cal. 2015) (awarding incentive award where "Plaintiff filed this lawsuit despite the knowledge that if he lost, the court might have ordered him to pay Defendant's attorneys' fees and costs."). The Court finds that these risks were substantial.

In addition to those risks, Salon Adrian itself dedicated more than a hundred hours to this litigation that took away from the operation of its small business. Specifically, Salon Adrian gathered documents in response to CBL's voluminous document requests, often having to contact various third-parties to obtain the requested documents, and answered the numerous interrogatories propounded on it by CBL. Salon Adrian also spent a day preparing for its deposition and then appeared for an all-day deposition. Salon Adrian remained in constant contact with Class Counsel regarding the progress of the litigation and had no less than thirty phone calls with Class Counsel to discuss the various aspects of the litigation. Salon Adrian reviewed even the most ministerial of pleadings that was essential in guiding Class Counsel's litigation efforts. Salon Adrian also spent a substantial amount of time working with Class Counsel to prepare its trial testimony. Thus, the Court finds reasonable an incentive award of $50,000 – which is not opposed by either the Defendants or the Settlement Class – should be granted.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that**:

(1) The Unopposed Motion for Final Approval (Docket No. 310) is **GRANTED**,

and the Settlement Class is finally certified and the Settlement is **APPROVED**;

(2) The Unopposed Motion for Attorney's Fees, Costs, and Incentive Award (Docket No. 309) is GRANTED and the Court **APPROVES** an award of attorneys' fees to Class Counsel in the amount of $27,000,000, **APPROVES** reimbursement of Class Counsel's litigation expenses in the amount of $1,000,000, and **APPROVES** an incentive award in the amount of $50,000 to Salon Adrian, all to be paid out of the Common Fund.

Dated:  August 22, 2019

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge